CHARLES T. McCLURE, EXECUTOR, ET AL. vs. THE
MIDDLETOWN TRUST COMPANY.

First Judicial District, Hartford, May Term, 1920.
PRENTICE, C. J, WHEELER, BEACH, GAGER and CASE. Js.

A testamentary trustee is bound to take such steps as ordinary prudence
    requires in the administration of the trust committed to his care.
The first duty of such a trustee is to secure possession of the assets of
    the trust estate, or to take reasonable steps to that end; but due
    diligence does not require the trustee to advance his own funds,
    or to incur expense or liability in the collection of assets for the
    trust estate.
In the present case the defendant trust company had been appointed
    trustee of a testamentary trust, the entire assets of which had been
    misappropriated by its predecessor. Held that before pursuing a
    thorough investigation of the liability of the sureties upon the bond
    of the defaulting trustee, or embarking upon litigation, it had the
    right to demand of the beneficiaries of the trust fund indemnity
    for the expenses attendant upon such an undertaking.
While such a trustee may not delegate its duties and powers to others,
    it may, and frequently must, act through agents or attorneys, in
    the selection and supervision of whom it must exercise reasonable
    care, and for whose diligence the trustee continues responsible.
The attorney selected by the defendant trustee in the present case
    was competent, but took no steps to present the claim—which
    then constituted the only asset of the trust fund—against the only
    living surety on the former trustee's bond, or against the estate
    of the deceased surety, and no other or further investigation was
    made by the defendant; nor did it take any steps to ascertain what
    its attorney was doing, if anything, or to obtain any further advice
    from him in respect to the matter. Held that in failing to present
    the claim against the estate of the deceased surety, in consequence
    of which the claim was barred, and in failing to make demand on
    seven of the nine beneficiaries of the trust fund, to advance the
    necessary moneys, the defendant's agent and attorney was remiss
    and negligent, and that for his failure in these respects the defen-
    dant was liable.
One of the two beneficiaries upon whom the defendant's attorney made
    demand for the advance of necessary funds to prosecute the claim,
    refused to comply therewith. Held that her refusal prevented her
    from now claiming a recovery against the defendant.
Another beneficiary, B, informed the defendant's attorney that she

McClure *v.* Middletown Trust Co.

did not want any action taken against the defaulting trustee so long as he continued to pay the arrears of income due to the surviving life beneficiary, or so long as the latter lived. *Held* that so far as *B* was concerned this request absolved the defendant from taking action against the sureties up to the time of the decease of the last surviving life beneficiary, but not thereafter.

The insolvency of a decedent's estate must be proved by the probate records or files; it cannot be shown by evidence of statements made by the administrator to others.

Self-serving declarations, oral or written, made by a deceased agent to third persons, are not admissible in behalf of his principal. Although the soundness of this rule has been questioned by eminent authority, the rule itself has become too firmly established to be challenged in this jurisdiction.

Argued May 5th—decided July 20th, 1920.

ACTION to recover damages sustained by several of the beneficiaries of a testamentary trust through the alleged negligence and omission of the defendant to pursue the sureties upon the bond of its predecessor, a defaulting trustee, brought to and tried by the Superior Court in Middlesex County, *Malbie, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant. *Error as to one plaintiff only.*

This case is a companion case to that of *State ex rel. McClure* v. *Northrop*, 93 Conn. 558, 106 Atl. 504. The facts essential upon this appeal are as follows:—

Charles Brewer died in 1860, and by his will created a trust fund to be held in trust during the lives of his five sons and of their widows for their use, and at the death of the last life tenant to be distributed to the surviving issue of the sons.

One Northrop succeeded to this trusteeship in 1884, and so continued until removed on July 24th, 1911; whereupon the defendant was appointed his successor. Prior to 1897 Northrop had misappropriated the entire trust fund, and at the time of his removal was not financially responsible. Northrop, upon his appointment in 1884, filed a probate bond, with Clarissa L.

Northrop, Ettie M. Northrop and Arthur B. Calef as sureties. Clarissa L. Northrop deceased prior to 1911, and her estate was distributed to D. Ward Northrop and Ettie M. Northrop, principal and surety on this bond. Ettie M. Northrop is living and was the wife of D. Ward Northrop, and at the time of defendant's appointment had equity in real estate of the value of over $1,300. Arthur B. Calef died in 1900, and his estate was distributed in 1901 to his four sons, only two of whom, J. Francis Calef and Arthur B. Calef, Jr., were financially responsible in July, 1911. J. Francis Calef had, at the date of the appointment of defendant, attachable property of the value of at least his distributive share, $3,300, in the estate of his father. Arthur B. Calef, Jr., died in 1912, leaving an estate inventoried at $8,178.50, but no return of claims was ever made. The distributive share of Arthur B. Calef, Jr., in the estate of his father was something over $3,300.

The defendant duly made demand on Northrop prior to August 14th, 1911, for the trust fund, but he neglected and failed to turn over the fund. It thereupon referred the whole matter of this trust to Mr. Pearne, a competent attorney at law and its regular attorney, to handle in any way he saw fit. Pearne made some investigation of the matter. There were no funds in the estate to pay for a thorough investigation, or to pay the expenses of litigation against the sureties on the bond or their representatives. Pearne advised defendant that it was under no obligation to expend its own funds in making investigation or in pursuing the litigation. Thereupon defendant requested Mrs. Fox and Mrs. North, upon whose application the defendant had been appointed and who had pressed defendant to take action, to advance to the trustee $150 to $200 to cover the expenses of this investigation

and litigation. They offered to pay $25, which defendant refused to accept and the matter was dropped. There were seven other beneficiaries of this trust fund, but defendant never made request of any of them for any sum with which to pay for such investigation and litigation.

The defendant has made no inventory of the trust estate, nor rendered an account of its doings to the Court of Probate, nor made demand upon Ettie M. Northrop, nor presented any claim against the estate of Arthur B. Calef, nor made any demand upon his legal representative or his distributees, nor made any investigation of or communicated with the beneficiaries of the trust estate except Mrs. Fox and Mrs. North, nor done anything to preserve or possess the estate, except as above stated.

At the time of his removal Northrop was making payment of arrears of income to one of the beneficiaries of the trust, Susan Brewer, who died February 26th, 1913, and who was the last survivor of the life beneficiaries under the trust.

Between the date of the defendant's appointment and February 26th, 1913, the husband of Jennie Blinn, daughter of Susan Brewer, acting for his wife, called on defendant and on one occasion informed defendant that Northrop was making said payments to Susan Brewer and that his wife did not desire action taken against him so long as he continued said payments or so long as Susan Brewer lived.

Another beneficiary, William Brewer, informed Pearne shortly after defendant's appointment, that he desired no action to be instituted to recover the trust estate.

Said J. Francis Calef and Arthur B. Calef, executors of the estate of Arthur B. Calef, Sr., were alive on July 24th, 1911, but the defendant neglected to present

a claim against said estate within six months after the claim of the trust estate accrued on August 14th, 1911, or at any other time. As a consequence of the failure to present said claim, the estate of Arthur B. Calef, Sr., and the distributees thereof, were discharged from liability as sureties on said bond.

None of the plaintiffs, excepting William Brewer, who defaulted, acquiesced in defendant's failure to present and prosecute such claim.

The defendant, by due diligence, would have collected from Ettie M. Northrop and from the distributees of the estate of Arthur B. Calef, Sr., the sum, after deducting all reasonable charges and expenses, of $5,500; and the defendant could have settled the trust estate and distributed the fund on or before July 1st, 1913, which would have been a reasonable time from the date of death of the last surviving life tenant, for this purpose.

*Alvan Waldo Hyde* and *Ernest A. Inglis,* for the appellant (defendant).

*George W. Crawford,* with whom, on the brief, was *Charles T. McClure,* for Jennie Blinn *et al.,* appellees (plaintiffs).

*Bertrand E. Spencer,* for the appellee (plaintiff Ella M. North).

WHEELER, J. The defendant challenges the right of the court to render judgment against it upon the facts found, because it insists that it has fulfilled all of its obligations as trustee and has not become liable through its negligence to the plaintiff beneficiaries. Determination of this question requires, primarily, consideration of the proper measure of care owed by the

defendant trustee in the administration of its trust, and then ascertainment whether the measure of care applied by the court squared with this standard.

The defendant's duty was limited to the exercise of due diligence in the light of the particular circumstances surrounding the administration of this trust. What ordinary prudence would do under these circumstances this defendant must do, and need do no more. *New Haven Trust Co.* v. *Doherty*, 75 Conn. 555, 560, 54 Atl. 209.

Upon qualification as trustee, the first duty resting upon the defendant was to secure possession of all the assets of the trust estate. 1 Perry on Trusts (6th Ed.) § 438. In the performance of this duty the defendant was under no absolute duty to secure possession of the assets, but merely to exercise due care in the preservation of the trust assets. Hence it follows that a trustee is not negligent in failing to secure assets where there was no reasonable chance of securing them. And hence, too, it follows that due diligence on his part does not require that he advance his own funds or incur expense or liability in the collection of assets for the trust estate. *Green* v. *Gaskill*, 175 Mass. 265, 56 N. E. 560; 39 Cyc. 322. There were no assets in the hands of the defendant trustee. Before it could pursue a thorough investigation of the liability of the sureties upon this bond, or embark in litigation, it had the right to demand of the beneficiaries indemnity for the expenses attendant upon the undertaking. 2 Perry on Trusts (6th Ed.) § 909. In the event of a refusal or neglect of the beneficiaries to respond to this demand, the defendant need go no further.

While the trustee may not delegate his duties and powers to others, it is obvious that he must act frequently through agents or attorneys. This is not a delegation of his powers, for the trustee remains re-

sponsible for the reasonable diligence of his agent or attorney. He must select his agents with reasonable care, and he must supervise their acts with the same care. *Donaldson* v. *Allen,* 182 Mo. 626, 650, 81 S. W. 1151. Whether, in a given case, the trustee will be justified in entrusting a specific part of the administration of the trust to an agent, must depend upon whether such act would be the act of the reasonably prudent trustee in a similar situation. The necessities of the trust may require the services of an agent, on account of the complexity or extent of the business or the special expert knowledge required. This is especially true in a case such as this, where the question of liability of the sureties, and of who the beneficiaries of the trust fund were, depended upon a careful investigation by a competent attorney of a difficult legal problem. And to this was added the practical consideration of how the trustee should finance the expense, and whether the results would warrant the outlay. All of these were questions for a lawyer, which the trustee would not be expected to solve and should not attempt to solve without the service and decision of competent legal counsel. The questions were not plain and were peculiarly within the lawyer's skill. *New Haven Trust Co.* v. *Doherty,* 75 Conn. 555, 563, 54 Atl. 209.

There is no question of the diligence of the defendant in selecting Judge Pearne as the attorney to entrust this matter to. But reasonable diligence on the part of the trustee required it to know generally what the attorney was doing in the carrying out of its business. It could not commit the cause to the attorney and relieve itself of all further supervision. In a general way it should know what steps the attorney was taking, and it should use due care to have him fulfil his employment. Subject to such supervision, it

might, as it did, leave to Judge Pearne the investigation of this matter, the decision of what steps to take, and then the taking of these steps. Investigation, decision and action it might leave to Judge Pearne. But when it did leave this matter to him it became responsible for his reasonable diligence, his decision became its decision, his acts its acts, and his neglect its neglect.

Four things at least it was incumbent upon Judge Pearne to do: first, ascertain the beneficiaries of the trust; second, decide upon the validity of the claim of the defendant against the sureties and the distributees of Arthur B. Calef, Sr.; third, present the claim of the defendant against the estate of Arthur B. Calef, Sr., in time to preserve its claim against this estate; fourth, having decided upon the validity of the defendant's claim, and finding no assets in its hands, it was his duty to make demand upon the beneficiaries of the trust for funds with which to pursue this litigation. In the protection and increase of the estate the trustee is not required to advance his own funds. Perry on Trusts (6th Ed.) §§ 330, 485. He has the right in case of need to call on the *cestui que trust* for funds, and if this demand is not met the trustee need go no further. He has done all that due diligence requires of him. 2 Perry on Trusts (6th Ed.) § 909. Judge Pearne made some investigation of the matter, how much did not appear. But he did advise the defendant that it was under no obligation to advance its own funds in order to take legal action against the sureties or their distributees. This advice was correct. It appears that he made demand upon two of the beneficiaries who urged the defendant to bring action, for a named sum to cover the expenses of the litigation, and that they offered to pay one sixth of the demand. This did not meet the duty which the demand of the trustee placed

on them; and their refusal ended the obligation of the trustee, so far as they were concerned, to pursue this litigation.

So far as appears, Judge Pearne never presented the claim of the defendant against the estate of Calef, Sr., and because of this the claim is barred. So far as appears Judge Pearne never made demand upon Ettie M. Northrop as surety, nor did the defendant. No other or further investigation appeared to have been made by the defendant than that made by Judge Pearne; and the trial court expressly finds that the defendant did not take any steps to see what its attorney was doing, or to obtain his advice, except as detailed above.

In failing to present the claim against the estate of Calef, Sr., and in failing to make demand upon the seven other beneficiaries, Judge Pearne did not, so far as appears, perform the duty committed to him. Reasonable diligence required that he do these things. The defendant is charged with his failure. His negligence is that of the defendant. It may well be that the unfortunate death of Judge Pearne has prevented the defendant from proving the facts, but we must take the record as we find it.

Mrs. North's refusal to advance the necessary funds with which the defendant could prosecute the action against the sureties, bars her from now claiming a recovery for failing to press the action, the funds for which she, though in duty bound, had refused to advance.

Mrs. Blinn, a daughter of Samuel Brewer, one of the five sons of Charles Brewer surviving him and who died in 1897, acting by her husband, had several interviews with defendant between the date of its qualification and the decease of the last survivor of the life beneficiaries under the trust. At one or more of these

interviews the husband informed the defendant that its predecessor, Northrop, was paying the arrears of income due to Mrs. Brewer, and that Mrs. Blinn did not wish action taken against Northrop so long as he continued said payments or as long as Susan Brewer lived. The defendant claims that this constituted an acquiescence on the part of Mrs. Blinn in its failure to prosecute its action against the sureties on this bond. We think this request of Mrs. Blinn did relieve the defendant from the prosecution of action against these sureties up to the time of the decease of Susan Brewer, but not after that time. If this request had been made before the period for the presentation of claims against the estate of Calef, Sr., had expired, the fact that the defendant failed to present the claim could not be considered as a ground of negligence in the action in behalf of Mrs. Blinn. The record does not give the date of this interview, so that the request cannot be found to have been made within the period when the claim might have been presented against the estate of Calef, Sr. Mrs. Blinn's request to the defendant would estop her from claiming that the trustee was negligent in not bringing his action prior to the decease of Susan Brewer. After that time there is nothing in her request which suggests that the claim should not be pressed, but the contrary. We find no basis for an estoppel against her present claim upon the defendant.

Two rulings on evidence are assigned on the appeal as erroneous. The plaintiffs laid in evidence a certified copy of the inventory of the estate of Calef, Jr., one of the distributees of the estate of Calef, Sr., a surety on the bond. The plaintiffs also proved that no list of claims presented against the estate of Calef, Jr., had been filed in the Court of Probate. A material issue in the case was whether the estate of Calef, Jr., was

solvent or not. Thereupon the defendant inquired of Mr. Carlson, attorney for Mrs. Calef, administratrix of the estate of Calef, Jr.: "Did Mrs. Calef, as administratrix of her husband's estate, make any statement to you with reference to the amount of bills against the estate?" The plaintiffs' attorney objected, on the ground of immateriality and because not the best evidence, and the court excluded the evidence.

Our statutes provide the only method of proving the insolvency of the estate of a deceased person. That method was not pursued here. It is suggested in the brief that Mrs. Calef was in parts unknown and hence this method of proof was the only method available. The complaint does allege that Mrs. Calef has gone to parts unknown, but this fact is not admitted in the record or found in the finding. So far as appears Mrs. Calef was available and no reason appears of record why the statutory procedure was not followed. The ruling was correct.

One other ruling on evidence is assigned as error. Warner, an officer of and a witness for defendant, testified that Judge Pearne had the entire handling of the proposed action against the said sureties. Thereafter, upon his direct examination, defendant offered a letter dated October 8th, 1911, written by Judge Pearne to Fox, husband of one of the beneficiaries and agent for her in this matter. The letter does not appear of record, but counsel for the plaintiffs, in objecting to its admission, summarized its contents as follows: "In this letter he says he has made an investigation of the matter, and his conclusions are, the bank's duties are such and such, and that he finds the situation as to the estate to be such and such and the beneficiaries to be such and such persons, etc., and outlines what he conceives to be the proper course of procedure." The letter was offered as an expression of Judge Pearne's

McClure *v.* Middletown Trust Co.

opinion and of the results of the investigation he had made. The defendant also offered what purported to be a reply to this letter, dated October 24th, 1911, and written by Fox to Judge Pearne. Both letters were excluded.

The ruling was in accordance with our law. The letters are the declarations of a deceased agent to third parties, and offered by his principal in its own behalf. As such they are characterized in the law of evidence as self-serving declarations. They fall within none of the recognized exceptions to the hearsay rule, and are not included among the declarations of deceased persons which our statute (§ 5735) expressly excepts from the hearsay rule. The only ground upon which the defendant attempts to secure the admission of this evidence, is through its claim that they are offered to prove knowledge on the part of the agent of a subject relevant to his agency and material to the issue involved. But it does not appear that it was offered for these purposes, and from the statement of the contents of the letters before us it is apparent that they were offered to prove what the agent had ascertained and done in order to justify his failure to pursue the actions and to present his claim. The authorities do not differ substantially in their adherence to the recognized rule against admitting self-serving declarations of a deceased agent in behalf of his principal. *Insurance Co. of North America* v. *Guardiola,* 129 U. S. 642, 9 Sup. Ct. 425; *Freeborn* v. *Smith,* 69 U. S. (2 Wall.) 160, 176; *Snow* v. *Warner,* 51 Mass. (10 Met.) 132; *Abel* v. *Fitch,* 20 Conn. 90, 96; *Houde* v. *Tolman,* 42 Minn. 522, 44 N. W. 879; *Providence-Washington Ins. Co.* v. *Owens* (Texas), 207 S. W. Rep. 666, 675; *Watson* v. *Davidson,* 141 Ark. 591, 595, 217 S. W. 777; 4 Chamberlayne on Evidence, §§ 2734, 2735; 16 Cyc. 1205. Most eminent authority have questioned the sound-

ness of this rule of evidence, and have favored the admission of statements of deceased persons who had competent knowledge when no apparent interest to deceive appeared, and they were made *ante litem motam.* Mellish, L. J., in *Sudgen* v. *St. Leonards,* L. R. 1 P. D. 154; Cockburn, C. J., in *Reg.* v. *Bedingfield,* 14 Cox C. C. 342; 2 Wigmore on Evidence, § 1576. But the rule has become too firmly established to be questioned in this jurisdiction.

There is error in part; the judgment in favor of Ella North is reversed, and in favor of the other plaintiffs is affirmed.

In this opinion the other judges concurred.