## CHARLES M. LYMAN, RECEIVER *vs.* CARLETON H. STEVENS ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 14th, 1937—decided January 5th, 1938.

*Frank R. Goldman,* with whom, on the brief, was *Russell H. Atwater,* for the appellants (defendants).

*Charles M. Lyman,* for the appellee (plaintiff).

AVERY, J.   This action was brought for a declaratory judgment determining the rights of the plaintiff in the proceeds of a parcel of real estate in Worcester, Massachusetts, held by the defendants as a committee of bondholders upon foreclosure of a mortgage thereon.   The facts are admitted in the pleadings or stipulated and as far as material may be

summarized as follows: In July, 1928, the Colonial Bond and Mortgage Company, hereinafter referred to as the trustee, foreclosed a mortgage which it held upon the real estate in question. Thereafter, on September 25th, 1928, it conveyed the property to the Mayflower Realty Corporation and received as consideration for the conveyance a mortgage of $800,000 to it as trustee to secure an issue of a like amount of bonds of varying denominations. The Mayflower Realty Corporation thereafter placed a second mortgage on the property of $350,000 to the Colonial Capital Corporation. The Mayflower Realty Corporation had been organized for the purpose of acquiring and holding title to the premises. The trustee or some of its officers and stockholders was instrumental in its formation and part or all of its capital was furnished and owned directly or indirectly by the trustee or some of its officers, stockholders or subsidiaries. The Colonial Capital Corporation was a subsidiary or allied corporation directly or indirectly controlled by the trustee or some of its officers and stockholders and some or all of the officers of the trustee were officers of the Colonial. Of the bonds issued to it by the Mayflower Realty Corporation, the trustee sold to the general public bonds to the amount of approximately $100,000 at face value, the balance of the bonds being owned by it and pledged with various persons and corporations as security for loans to it. The bonds had coupons annexed providing for the payment of interest semiannually.

When the first semiannual interest coupon became due the mortgagor was in default as to interest, insurance and taxes and the trustee paid from its own funds the coupons then due upon the bonds which it had sold to the general public. It likewise paid the interest on the loans to it for which it had pledged

bonds as collateral; and, on such payment, the coupons then due upon the pledged bonds were detached and returned to it. When the second coupon became due the same situation existed and the trustee paid the interest and the coupons were returned in the same manner. When the third coupon became due at the expiration of another six months' interest period the same course was followed except that a creditor, the Worcester County National Bank, kept and refused to surrender the coupons due in the third period on March 25th, 1930. On May 31st, 1930, a receiver of the trustee was appointed and thereafter the plaintiff was appointed permanent receiver and thereafter the receiver resigned the trusteeship under the mortgage and a successor trustee was appointed. On October 10th, 1930, the successor trustee foreclosed the mortgage and a committee of the bondholders acting under an agreement for the benefit of all depositing bondholders acquired title to the property at the foreclosure sale and are still holding the same. The plaintiff deposited with the bondholders' committee the coupons which the trustee had paid to the holders of bonds sold by it and which it had received from the banks upon the payment by it of the interest upon its loans. The plaintiff claims that when the property is sold by the bondholders' committee he, as representing the trustee, is entitled to share in the proceeds of the sale pro rata with the other depositing bondholders in respect of the coupons deposited. The defendants, the bondholders' committee, claim, on the other hand; that the receiver is entitled to share in the avails of the sale of the property only after all the other bondholders have been paid in full.

For several months prior to the institution of the receivership, the president of the trustee was negotiating for the sale of the mortgaged property, and

about March, 1930, received an offer to purchase it at a price in excess of the mortgage, namely, $925,000. He did not accept this offer, but continued his efforts and on one occasion received an inquiry as to whether the trustee would accept $1,000,000 for the property. His negotiations for the sale were never consummated and no offer was accepted. At or before the time of the negotiations, he had been advised by real-estate experts that the property was worth about $1,200,000.

The situation in the present case was that of a corporation holding a piece of real estate upon which it desired to reimburse itself as to all or part of the cost by selling bonds secured thereby to the general public. The Colonial Bond and Mortgage Company, the trustee, or its officers and stockholders were directly interested in the property and in the second mortgage. It is a fair assumption therefore that the deed of trust was drawn in the interest of the trustee. The bonds were delivered to the trustee for the purpose of selling them to the general public and the agreement provided that it might become the owner of some or all of them. Accordingly the deed of trust provided among other things that the trustee should be answerable for its own wilful neglect or default and be responsible for reasonable diligence in the performance of the trust; that the coupons attached to the bonds should always be transferable by delivery merely; that in case of default by the mortgagor in the payment of taxes, assessments, insurance or interest, etc., as provided in the mortgage, the trustee, if it deemed it advisable, might make such payment or any other payment for the protection of the property and that any such payment should become part of the mortgage debt. It also provided that the trustee in its individual capacity might advance to any of the holders of any bonds any payment of principal or

interest not paid by the mortgagor when due, and should thereupon, to the extent of such payments, be subrogated to the rights of such holders of bonds; that in case of foreclosure the proceeds of the sale less expenses should be paid to the bondholders pro rata. An exclusive right to enforce the mortgage was given to the trustee, but the right was given to the bondholders in case the trustee did not proceed in case of default to make application to a court for permission to proceed upon their own behalf.

In construing the trust instrument in this case it is to be borne in mind that it is the trustee's own language which is to be interpreted; and if the instrument is so drawn as to leave room for two constructions, the words used should be interpreted most strongly against the trustee. The rule of construction is analogous to that applied in the construction of insurance policies. *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 424, 172 Atl. 777; *Fleener* v. *Omaha National Co.*, 131 Neb. 253, 256, 267 N. W. 462. A reading of the mortgage agreement makes it evident that the individual interest of the trustee, its officers and stockholders was quite thoroughly concealed. A person reading the instrument with reasonable care would understand that the situation was one where the trustee was acting solely in the interests of holders of bonds and that it had no individual interest other than such as might accrue to it through ownership itself of some of the bonds. It is estopped to deny that it was incumbent upon it to act as one without individual interest other than such as might arise out of its individual ownership of some of the bonds and as to them its interest would be identical with that of those who purchased bonds from it. In carrying out its duties under a trust of this character, "the trustee was bound to use the same diligence and care in pro-

tecting the interest of the noteholders that a prudent man would use in protecting his own interests." *Hoffman* v. *First Bond & Mortgage Co., Inc.*, 116 Conn. 320, 327, 164 Atl. 656. The trustee must not put itself in a position where its self-interest will conflict with its duties as trustee. *State ex rel. Johnson* v. *Atchison*, 105 Conn. 315, 322, 135 Atl. 456. It must exercise due diligence in the administration of the trust. *McClure* v. *Middletown Trust Co.*, 95 Conn. 148, 153, 110 Atl. 838; *New Haven Trust Co.* v. *Doherty*, 75 Conn. 555, 560, 54 Atl. 209. "The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." Restatement, Trusts, Vol. 1, § 170. "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of . . . third persons." 3 Bogert, Trusts & Trustees, § 543.

The primary duty of the trustee in this case was to protect the bondholders. *Ashuelot R. Co.* v. *Elliot*, 57 N. H. 397, 433; *Loud* v. *Winchester*, 52 Mich. 174, 183, 17 N. W. 784. To permit its own interest or that of its officers and stockholders to influence its judgment in the transaction would constitute a breach of duty. *Ashuelot R. Co.* v. *Elliot*, supra, 434; *White* v. *Macqueen*, 360 Ill. 236, 248, 195 N. E. 832; 3 Bogert, Trusts & Trustees, pp. 1523, 1722. The claim of the appellants in substance is that the trustee was guilty of a breach of duty in several respects: (a) In neglecting to foreclose promptly after default by the mortgagor; (b) in failing to sell the property when it had

an opportunity to do so at a price which would have paid the bondholders in full; (c) in attempting to protect conflicting interests including its own; (d) in making the payment of interest from its own funds; (e) in failing to inform the bondholders to whom bonds had been sold that the mortgagor was in default in its payments and that the interest due on the coupons was being paid, not by the mortgagor, but by the trustee from its own funds.

The purpose of this trust was not to bring about a sale and secure immediate payment to the bondholders of their bonds, but to secure their investment, that the interest on their bonds should be paid as it became due from time to time and the principal thereof should be paid at maturity. A neglect of duty upon the part of the trustee therefore is not shown from the mere fact that it did not immediately upon the first default foreclose the mortgage or sell unless further facts were shown which would make it the duty of a prudent person to do so under the circumstances. The trustee had the right to exercise business judgment as to whether it would foreclose immediately on the first default or delay in the expectation that the default would be cured. As long as the outstanding bonds were secured by abundant equity in the property there was no reason why the trustee should attempt to make a sale for the purpose of paying off bonds not yet due. It is true, considering the transaction in retrospect, that if the president of the trustee had brought about a sale in 1930 for $925,000, the amount, if received in cash, would have been sufficient to have paid the bondholders in full; but it appears that about that time there was an inquiry for the property at about a million dollars and the president of the trustee was informed by real-estate experts that the property was worth $1,200,000. Upon the facts appearing in the

finding we cannot say that the trial court was obliged to find as a matter of law that the trustee was influenced in failing to sell the property by a desire to protect its own or other interests.

It is not found that the advancement of interest was for the trustee's own benefit and therefore a breach of trust. Indeed, the trust instrument expressly authorized the trustee to make payment of interest from its own funds. In this respect the case at bar is distinguishable from *Ward* v. *Guaranty Trust Co.,* 128 U. S. 416, 9 Sup. Ct. 131, and *First Trust Co. of Lincoln* v. *Ricketts,* 75 Fed. (2d) 309, relied on by the defendant. There are not sufficient facts appearing in this record for us to say that the trustee acted otherwise in any of these respects than a prudent man would have done under the same circumstances and that its conduct was in any respect influenced by any consideration other than the interest of the bondholders. This disposes of all of the appellants' claims, except that the trustee failed in its duty to communicate to the bondholders that the mortgagor was in default and the coupons were being paid by the trustee from its own funds.

In such a case as this when a substantial default of the mortgagor occurred and the trustee, in the exercise of the powers given to it by the trust instrument, undertook to pay the coupons due from its own funds, honesty and fair dealing required that the trustee within a reasonable time should take steps to notify the bondholders of the default and of its action, that the bondholders might know what was happening to their security and that they might have an opportunity to protect their own interests by application to the court as provided in the mortgage agreement. *Marshall & Ilsley Bank* v. *Guaranty Investment Co.,* 213 Wis. 415, 250 N. W. 862, 865; *First Trust Co. of*

*Lincoln* v. *Carlsen*, 129 Neb. 118, 123, 261 N. W. 333; *Loud* v. *Winchester*, 52 Mich. 174, 183, 17 N. W. 784; 4 Bogert, Trusts & Trustees, § 961. We hold, therefore, that the trustee in this case committed a breach of duty in failing to give reasonable notice to the bondholders of the default of the mortgagor and the payment from the trustee's own funds of the interest coupons. The trustee consequently is chargeable with any loss or depreciation of value in the trust property resulting from the breach of duty. Restatement, Trusts, Vol. 1, § 206, Comment *a.*

In the instant case it does not appear that the bondholders were in any way harmed by the failure of the trustee to notify them. The trial court considered it a fair inference that the bondholders did know. In any event, there is no basis for an inference that they did not know, or were deceived in any particular by the conduct of the trustee, nor does it appear that they were in any way harmed thereby. It does not appear that they would have taken any action in protection of their interests or that they were induced to forego any action which they might otherwise have taken. It must also be remembered that the question as it is now presented is not one of rights as between the bondholders and the Colonial Bond and Mortgage Company, but one between the bondholders and the creditors of that company who are represented by the receiver; and even if under the circumstances the rights of the company might be subordinated to those of the bondholders, a very different situation is presented as regards the rights of its creditors who were apparently innocent of any participation in its breach of trust. See *Finnegan* v. *LaFontaine,* 122 Conn. 561, 570, 191 Atl. 337. Under such circumstances, to deny to the receiver the right to present coupons and share pro rata in the distribution of the assets in the hands

of the reorganization committee would be, in effect, penalizing him for a technical default of the corporation. "The imposition of such a penalty should be strictly guarded." *Chapter House Circle* v. *Hartford National Bank & Trust Co.,* 121 Conn. 558, 577, 186 Atl. 543. The aim of equity in such a situation is to protect the beneficiaries from any loss which they may have suffered by reason of the neglect or wrongful conduct of the trustee, but not to penalize the trustee for a purely technical breach of trust where no harm or injury appears to have been thereby caused to the beneficiaries.

There is no error.

In this opinion the other judges concurred.