**INVESTMENT COMPANY INSTITUTE,**

v.

**Robert CLARKE, et al.**

**Civ. No. H 85–160 (JAC).**

United States District Court,
D. Connecticut.

Jan. 21, 1986.

John F. Scully, Hartford, Conn., Henry A. Hubschman, Harvey L. Pitt, David M. Miles, Washington, D.C., for plaintiff Inv. Co. Institute.

L. Robert Griffin, Eugene M. Katz, Washington, D.C., for defendant Comptroller of the Currency.

Scott P. Moser, Thomas J. Groark, Jr., J. Bruce Boisture, Joan K. Willin, Hartford, Conn., Howard N. Cayne, Washington D.C., for defendants-intervenors Connecticut Bank & Trust Co., N.A., and The Connecticut Bank & Trust Co. IRA Collective Inv. Fund.

**RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT**

JOSÉ A. CABRANES, District Judge:

This challenge to a decision of the Comptroller of the Currency ("the Comptroller") is before the court on the parties' cross-motions for summary judgment.[1]

The Investment Company Institute ("ICI" or "the plaintiff") contends that the Comptroller erred in permitting the Connecticut Bank and Trust Company ("CBT" or "the bank") to market a Collective Investment Fund ("the Fund") consisting of Individual Retirement Account ("IRA") assets. ICI asserts that the bank's sale and promotion of interests in the Fund to settlors of IRA trusts violates the restrictions on the activities of commercial banks contained in the Glass-Steagall Banking Act of 1933, 48 Stat. 162 (codified as amended in various sections of 12 U.S.C.) ("the Glass-Steagall Act").

---

1. C.T. Conover, the Comptroller of the Currency when the challenged ruling was issued and when this action was commenced, has since been replaced by Robert Clarke. At oral argument on January 14, 1986, the court ordered, absent objection, that the caption of this action be changed from *"Investment Company Institute v. C.T. Conover, et al."* to *"Investment Company Institute v. Robert Clarke, et al."*

The relevant provisions of the Glass-Steagall Act state that a national bank "shall not underwrite any issue of securities or stock," 12 U.S.C. § 24 (Seventh), and that anyone "engaged in the business of issuing, underwriting, selling or distributing ... securities" cannot also engage in "the business of receiving deposits." 12 U.S.C. § 378(a)(1). The plaintiff contends that the units of the Fund offered to settlors of IRA trusts constitute "securities" that the bank is prohibited from issuing under the Glass-Steagall Act.[2]

## I.

The court is required to accord substantial deference to the Comptroller's construction of federal banking statutes, such as the Glass-Steagall Act, that fall within his regulatory jurisdiction. *See Securities Industry Association v. Board of Governors*, 468 U.S. 207, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984). Accordingly, the Comptroller's interpretation of the Glass-Steagall Act, as applied to the activity at issue in this lawsuit, "should be overturned only if the Court finds that it conflicts with or otherwise frustrates the policies that the statute seeks to implement." *Investment Company Institute v. Conover*, 593 F.Supp. 846, 850 (N.D.Calif.1984) ("*Conover I*"). *See Investment Company Institute v. Conover*, 596 F.Supp. 1496, 1500 (D.D.C.1984) ("*Conover II*") (same).[3]

It is undisputed that the commingling of retirement trust assets is a fiduciary service that may be offered by national banks consistently with the requirements of the Glass-Steagall Act. The federal banking agencies have, for nearly 60 years, administratively authorized national banks to commingle trust assets in common trust funds.[4] Furthermore, banks have been authorized for some 30 years to operate "collective investment funds" consisting solely of assets of tax-exempt retirement, pension, profit-sharing, stock bonus or other similar trusts. *See* 12 C.F.R. § 9.18. *See also Investment Company Institute v. Camp*, 401 U.S. 617, 624, 91 S.Ct. 1091, 1096, 28 L.Ed.2d 367 (1971) (observing that "[f]or at least a generation, ... there has been no reason to doubt that a national bank can, consistently with the banking laws, commingle trust funds"); Stipulation of Facts (filed Oct. 28, 1985) at ¶ 18.

These activities were recognized by Congress in providing statutory authority for the establishment of tax-preferred IRAs as part of the Employment Retirement Income Security Act of 1974 ("ERISA"). For example, the statute prohibits IRA trustees, expressly including banks, from commingling the assets of IRA trusts "except in a common trust fund or common investment fund." 26 U.S.C. § 408(a)(2), (5). The legislative history of ERISA further reflects the understanding of Congress that it is "common practice for banks ... to maintain pooled investment funds for [retirement] plans." H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess. 316, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5096. The Senate Finance Commit-

---

**2.** As the parties acknowledged at oral argument, units of the trust do not necessarily run afoul of the Glass-Steagall Act merely because they are registered as "securities" under the Securities Act of 1933. *See also Investment Company Institute v. Conover*, 593 F.Supp. 846, 852–53 (N.D. Calif.1984) ("*Conover I*"); *Investment Company Institute v. Conover*, 596 F.Supp. 1496, 1500–01 (D.D.C.1984) ("*Conover II*").

**3.** Two district courts that have considered the identical issues presented here have reached diametrically opposing results. *See Conover I, supra; Conover II, supra.* Appeals of these decisions have apparently been pending for more than a year before the Courts of Appeals for the Ninth Circuit and the District of Columbia Cir-

cuit. Of course, this court is not bound by the decisions of other District Courts or by the decisions of Courts of Appeals for any circuit other than the Second Circuit. *See, e.g., Securities and Exchange Commission v. Shapiro*, 494 F.2d 1301, 1306 n. 2 (2d Cir.1974).

**4.** The purpose of common trust funds is to provide greater diversification of investments and lower administrative costs to the participating individual trusts. The bank as trustee purchases for each individual trust an undivided interest in the common trust. The interest of the individual trust is proportionate to the assets that it contributed to the common trust. *See* Stipulation of Facts (filed Oct. 28, 1985) at 10 n. 1.

tee, in its report on ERISA, clearly contemplated that IRA assets could be invested, *inter alia*, in "a common trust fund managed by a bank." S.Rep. No. 383, 93d Cong., 1st Sess. 132 (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4890, 5015.

The plaintiff nonetheless contends that the marketing by CBT of interests in the Fund is inconsistent with the provisions of the Glass-Steagall Act as interpreted by the Supreme Court in *Investment Company Institute v. Camp, supra.* That decision indicated that the Glass-Steagall Act, while prohibiting a bank from promoting commingled agency accounts that were deemed to be essentially equivalent to mutual funds, would permit a bank to "commingle assets which it has received for a true fiduciary purpose rather than for investment." 401 U.S. at 638, 91 S.Ct. at 1102. Accordingly, the determinative question presented first to the Comptroller, and now to this court, is whether the IRA contributions commingled by CBT in the Fund can be said to have been "received for a true fiduciary purpose."[5]

## II.

The Comptroller concluded that the nature of the relationships between CBT and the Fund, and between CBT and the individual IRA participants, provides sufficient assurance that the challenged activities constitute "fiduciary services" that are not barred by the Glass-Steagall Act. *See* Decision of the Office of the Comptroller of the Currency on the Application by Connecticut Bank and Trust Company, N.A., to Establish a Common Trust Fund for the Collective Investment of Individual Retirement Account Trust Assets (dated Feb. 7, 1985) ("Comptroller's Decision") at 16. The Comptroller's interpretation of the statute cannot be deemed unreasonable with respect to the Fund at issue in the instant case.

First, CBT is the trustee under Connecticut law of both the Fund and the individual IRA trusts and therefore is required to administer all of these trusts "with the care of a prudent investor." C.G.S. § 45–88. As the Comptroller observed in his decision,

> Connecticut law imposes upon the Trustee significant fiduciary duties and obligations, including the duty to obey the donor's instructions, to protect the fund, to exercise due diligence, to be completely loyal to the interests of the beneficiaries, and to avoid being influenced by any third-party or personal interest which may conflict with duties as Trustee.

Comptroller's Decision at 4–5, *citing Palmer v. Hartford National Bank & Trust Co.,* 160 Conn. 415, 279 A.2d 726 (1971); *Phillips v. Moeller,* 148 Conn. 361, 170 A.2d 897 (1961); *Conway v. Emeny,* 139 Conn. 612, 96 A.2d 221 (1953); *Lyman v. Stevens,* 123 Conn. 591, 197 A. 313 (1938); *McClure v. Middletown Trust Co.,* 95 Conn. 148, 110 A. 838 (1920).

Moreover, CBT's relationship to the Fund and to the individual IRA trusts is regulated under ERISA as well as under Connecticut law. For example, ERISA requires that the individual IRA trusts be established "for the exclusive benefit of an individual or his beneficiaries" pursuant to written governing instruments that satisfy specified requirements. 26 U.S.C. § 408(a)(1). The trustee bank is prohibited under the Internal Revenue Code from engaging in various forms of self-dealing with the trusts. *See* 26 U.S.C. § 4975. A person may contribute no more than $2,000 per year to an IRA trust. *See* 26 U.S.C.

---

**5.** The court does not interpret *Investment Company Institute v. Camp, supra,* to require that a banking service, such as the Fund, be wholly devoid of "investment purpose" in order to satisfy the requirements of the Glass-Steagall Act. Indeed, the purpose of any common trust fund is to engage in investment activity. *See Black's Law Dictionary* 741 (rev. 5th ed. 1979) (defining "investment" as "[t]he placing of capital or laying out of money in a way intended to secure income or profit from its employment"). It appears instead that the distinction that the Supreme Court sought to draw in *Camp* was between activities motivated solely by an investment purpose and activities motivated, in significant part, by a purpose other than merely "to secure income or profit."

§ 408(a)(1). The assets in an IRA trust can be distributed only when the individual trustor reaches age 59½, dies or becomes disabled unless he is willing to incur a substantial tax penalty. *See* 26 U.S.C. § 408(f). The trustor's interest in his IRA is not transferable except by death, *see* 26 U.S.C. § 408(a), and is not to be used as security for indebtedness. *See* 26 U.S.C. § 408(e)(4). These restrictions satisfied the Comptroller that the Fund "cannot serve simply as a vehicle for investment" because "[t]he participant is not seeking a short-term profit, but is primarily interested in preservation, management and growth of assets that will be available to him" only at some future date. Comptroller's Decision at 19.

The fiduciary nature of the Fund is also evidenced by CBT's intent to "offer the Trust to IRA customers as part of a total IRA program" and to "advertise the Trust as being merely one of several IRA alternatives." *Id.* at 5. CBT's representations to the Comptroller that the Fund "will not be marketed as a separate investment service independent of the other IRA options being offered," *id.* at 6, further indicate that CBT is offering a package of "fiduciary services" rather than a mere investment vehicle. The plaintiff concedes that CBT has acted in accordance with these representations. *See* Stipulation of Facts at ¶ 10.

The fiduciary obligations of CBT are not appreciably altered by its appointment of an independent supervisory committee to oversee the Fund as required by the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.* Indeed, the existence of an independent supervisory committee, as well as the Comptroller's reservation of the right to withdraw approval of the Fund if the supervisory committee removes CBT as trustee or investment adviser, *see* Comptroller's Decision at 12–13, offers additional assurance to IRA customers that CBT will observe its fiduciary responsibilities under state law with respect to the Fund. Furthermore, CBT is separately accountable to its IRA customers as trustee of their individual IRA trusts.

It is clear that the concerns that motivated the Congress to adopt the Glass-Steagall Act are no more present in the Fund than in the traditional common trust funds and collective investment funds whose legality is conceded by the plaintiff. For example, CBT is no more likely to make unsound loans to companies whose shares are held by the Fund than to companies whose shares are held by the bank's other pooled trust funds. Similarly, CBT's reputation would be injured in the same way if it mismanaged the Fund or if it mismanaged any other pooled trust funds. The bank's "salesman's stake" in selling units of the Fund is no different from its "salesman's stake" in soliciting participations in other pooled investment funds; the marketing of the Fund as only one of several IRA options available to CBT customers further demonstrates that "[t]he bank's only 'stake' here is in selling its services of managing trust assets, a stake it has in every trust situation, whether administered in a common fund or otherwise." *Id.* at 24.

In sum, the Comptroller correctly found that CBT's offering of the Fund does not conflict with the policies that the Glass-Steagall Act was designed to further. Indeed, the additional protections-mandated by ERISA suggest that the Fund will be even less likely than traditional common trust funds to engage in many of the questionable activities that prompted the adoption of the Glass-Steagall Act.

### III.

A different result is not required merely because the availability of the Fund is advertised to the public. As the Supreme Court held in *Franklin National Bank v. New York*, 347 U.S. 373, 377–78, 74 S.Ct. 550, 553–54, 98 L.Ed. 767 (1953), national banks are permitted to advertise the services that they lawfully may offer to the public absent some "affirmative indication" to the contrary. The parties have pointed to no "affirmative indication" of congressional intent that banks refrain from informing the public of their IRA services.

Moreover, collective investment funds composed entirely of tax-exempt retirement assets have been exempt since 1972 from the Comptroller's restrictions on the marketing and advertising of other common

trust funds. *See* 12 C.F.R. § 9.18(a)(2), *repromulgated in* 37 Fed.Reg. 24,161 (1972). The Comptroller's decision to treat the Fund as a collective investment fund for these purposes is not unreasonable, because the Fund is composed entirely of tax-exempt retirement assets.

Finally, the advertising of the Fund, at least to the extent contemplated by CBT, appears to be fully consistent with the congressional purpose of encouraging taxpayers to save for their retirement through the use of tax-favored IRAs.

### Conclusion

For the reasons stated above, the court holds that CBT's offering of the IRA Collective Investment Fund constitutes a "sale of fiduciary services" rather than a mere "sale of investments" and therefore satisfies the requirements of the Glass-Steagall Act as construed by the Supreme Court in *Investment Company Institute v. Camp, supra,* 401 U.S. at 638, 91 S.Ct. at 1102. Accordingly, the defendants' motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. Judgment for the defendants shall enter forthwith.

It is so ordered.