[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 7151
The plaintiffs Dennis Hackbarth and Arlene Hackbarth and the defendant Robert Hackbarth are siblings. They also are trustees of the Hackbarth Family Trust (the trust), an inter vivos trust of which their father, Herman Hackbarth, is settlor. A fourth sibling, Clifford, died in 1980. The corpus of the trust is a non-winterized waterfront cottage in Guilford, Ct. that the plaintiffs and the defendant have enjoyed as children and adults for most of the twentieth century.
The cottage consists of a living room, measuring fifteen feet by twenty feet, a kitchen, measuring twelve feet by fifteen feet, and two small bedrooms on a second floor. It also has two porches and a large deck. The cottage is not serviced by city water or city sewers. Drinking water is obtained from a 700 gallon holding tank that collects rain water. There is an outdoor shower by the deck and, according to the defendant, a shower underneath the cottage. A toilet is provided by a fascinating device known as a "Clivus Multrum."
The trust agreement provides that the cottage shall be maintained by the trustees and "used as a summer residence for the members of the Hackbarth family." The trust further provides that "the "Hackbarth Family' shall be defined as the Settlor, his spouse, the settlor's issue and their legal issue."
In May of 1995, the plaintiff Dennis Hackbarth sought to open a discussion with the other trustees about how best to schedule use of the cottage, ostensibly so that its resources would not be overwhelmed. In a letter to the other trustees, he proposed that they implement an exclusive use agreement whereby each of the four branches of the family entitled to use the cottage would have exclusive use for assigned periods during the months of July and August. In a later letter dated April 14, 1997 and sent to the defendant Robert Hackbarth, the plaintiffs Arlene and Dennis Hackbarth indicated that as a majority of the trustees, they were in fact implementing an exclusive use arrangement with regard to the cottage. They divided the months of July and August into four use periods running from July 1st to July 15th; from July 16th to July 31st; from August 1st to August 15th; and from August 16th to August 31st. In that same letter, they solicited Robert's input in deciding who should use the cottage each period. Despite letters sent back and forth between the plaintiffs' and the CT Page 7152 defendant's respective attorneys, the defendant refused to accede to the exclusive use agreement.
By complaint and application for injunction dated January 29, 1998, the plaintiffs sought damages and an injunction against the defendant's continued use the cottage in violation of the exclusive use agreement. The court (Pittman, J.) granted the plaintiffs' application for a temporary injunction. The defendant then moved for summary judgment on the complaint, based on his special defenses. The court (Zoarski, J.) denied that motion.
The case was then tried to the court.
 I
Preliminarily, the defendant renews his claim that he has been sued in his capacity as trustee and that the plaintiffs improperly seek equitable relief controlling his discretion as trustee. Another judge of this court denied an earlier motion filed by the defendant, for summary judgment, raising this issue. That decision is not binding on me. Breen V. Phelps,186 Conn. 86, 98-100, 439 A.2d 1066 (1982). Although I concur that the defendant's motion was properly denied, I revisit the issue raised therein because I disagree with the suggestion in that opinion that the defendant has been sued in his capacity as trustee.
The summons in this action simply names the defendant and does not suggest that he is sued as trustee. "" [T]he character in which one is made a party to a suit must be determined from the allegations of the pleadings, and not from the title alone. Where the allegations of the complaint indicate with reasonable certainty that [a defendant is sued]., in a representative capacity, although not specifically stated, this is sufficient to fix the character of the suit. Where it is doubtful in what capacity a party sues [or is sued] . . . the entire complaint may be examined to determine the question; and reference may also be had to the pleadings as a whole or the entire record.' 67A C.J.S., Parties, § 117; see Boyd v. Nelson's Restaurant,4 C.S.C.R. 7 (1998); cf. Lussier v. Department of Transportation,228 Conn. 343, 350-352 n. 7, 636 A.2d 808 (1994). . . ." ButtnerV. Planning Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 304231 (May 27, 1994). "Moreover, complaints must be construed in the manner most favorable to sustaining their legal sufficiency." Oakley v.CT Page 7153Commission on Human Rights and Opportunities, 38 Conn. App. 506,520, 662 A.2d 137 (1995), affirmed, 237 Conn. 28, 675 A.2d 851
(1996). "[T]he interpretation of pleadings is always a question of law for the court. . . . The burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." (Citations omitted; emphasis omitted.) Unitedcomponents, Inc. V. Wdowiak, 239 Conn. 259, 264, 684 A.2d 693
(1996).
The complaint identifies each of the three trustees, including the defendant, but focuses on the defendant's behavior in refusing to comply with the exclusive use arrangement. Moreover, while the complaint seeks injunctive relief and damages, at trial the plaintiffs did not present any claim or evidence of damages. The specific injunctive relief they sought was "lain injunction requiring the Defendant to comply with the Plaintiff's [sic] decision to adopt and implement the exclusive use arrangement.
The thrust of the complaint and the evidence at trial therefore, is that it is as a beneficiary that the defendant refuses to accede to the plaintiffs' decision. The defendant testified that he believed the exclusive use arrangement was unfair to him. For these reasons, and because injunctive relief is available to the plaintiffs against the defendant individually but not as trustee, the court determines that the defendant is sued in his capacity as a beneficiary only.
The defendant also renews a claim which was raised in his earlier motion for summary judgment, that this court lacks jurisdiction to entertain this action because the plaintiffs have not joined all beneficiaries. Again, I concur in the earlier decision in this case, which held to the contrary. A trustee may maintain suit without joining the beneficiaries of the trust. General Statutes § 52-106[1]; Investors Mortgage Co. v.Rodia, 31 Conn. App. 476, 479-80, 625 A.2d 833 (1993).[2]
 II
CT Page 7154
The classic requirements for a permanent injunction are irreparable harm and the lack of an adequate remedy at law.Advest, Inc. v. Wachtel, 235 Conn. 559, 562-63, 668 A.2d 367
(1995); Scinto V. Sosin, 51 Conn. App. 222, 245, 721 A.2d 552
(1998). A prayer for injunctive relief is addressed to the sound discretion of the court, exercised according to settled principles of equity; Advest, Inc. V. Wachtel, supra,235 Conn. 563; and such relief may be denied even when irreparable harm has been shown. Gorra Realty, Inc. v. Jetmore, 200 Conn. 151, 165,510 A.2d 440 (1986).
The trustees hold legal title to the res of the trust for the benefit of the beneficiaries. Second Exeter Corporation v.Epstein, 5 Conn. App. 427, 430-31, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d 932 (1986). Article VII of the trust instrument provides that" [t]he trustees shall have all of the powers granted pursuant to General Statutes § 45-100e [now § 45a 234], in addition to other powers granted in the instrument." Pursuant to Article V of the trust instrument, the trustees may act by majority vote. Accordingly, pursuant to the broad powers conferred by General Statutes § 45a-234[3] and by the trust agreement, a majority of the trustees adopted the exclusive use arrangement. Despite this action, the defendant testified that unless injunctive relief continued,[4] he would use the property without regard to the exclusive use arrangement. Therefore, the plaintiffs have proven that without continued injunctive relief they will suffer irreparable harm.
With regard to whether the plaintiffs have adequate remedies at law, I am mindful that the use to which the trust puts the cottage is peaceful enjoyment during the summer by members of the Hackbarth family. The plaintiffs' action for this permanent injunction seeks to protect that use. ""Any wrongful interference with these interests of the . . . trustee[s] is . . . a wrong to the trustee[s] and gives [them] a cause of action for redress or to prevent a continuance of the improper conduct.'" Second ExeterCorporation v. Epstein, supra, 5 Conn. App. 430, quoting Bogert, Trusts and Trustees (2nd Ed. Rev.) § 869, p. 87. Damages would not adequately remedy the interference with the trustees' interests, nor are damages sought. The plaintiffs have no adequate remedy at law.
 III
The defendant claims that the exclusive use arrangement is CT Page 7155 unfair and constitutes self-dealing by the plaintiffs. The settled rule here is that "[t]he trustee must not put itself in a position where its self-interest will conflict with its duties as trustee. State ex. rel. Johnson v. Atchison, 105 Conn. 315, 322,135 A. 456 [1926]. It must exercise due diligence in the administration of the trust. McClure v. Middletown Trust Co.,95 Conn. 148, 153, 110 A. 838 [1920]; New Haven Trust Co. V.Doherty, 75 Conn. 555, 560, 54 A. 209 [1903]. The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know. Restatement,Trusts, Vol. 1, § 170. One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of . . . third persons." Lyman v. Stevens,123 Conn. 591, 597, 197 A. 313 (1938).
The exclusive use arrangement allocates two weeks in July and August for each branch of the Hackbarth family — Robert's family, Dennis' family, Clifford's family, and Arlene's family — except that the settler may use the cottage at any time. It may be, as the defendant argues in his brief, that unlike his brother and sister, he "is a retired school teacher and his time is his own. He can visit the cottage, at any time. He enjoys going to the cottage with his children and grandchildren. His daughter has three children and visited the cottage frequently during the summer months. The defendant's son . . . although he now resides in New Hampshire, enjoys going to the cottage and the exclusive use arrangement restricts his opportunity to go there." These personal circumstances of the defendant, however, do not render the arrangement unreasonable nor do they prove self-dealing. While the defendant may feel
worse off, the plaintiffs are no better off under this arrangement than is the defendant. Indeed, from the evidence, the court infers that the defendant will remain the principal user of the cottage for the ten month balance of the year. including the summer months of June and September. The plaintiffs have proven by clear and convincing evidence that they have not dealt with the defendant unfairly or engaged in selfdealing.
 IV
The defendant next claims that the plaintiffs failed to prove CT Page 7156 overcrowding, the reason given by the plaintiffs for the new use arrangement. In paragraph 7 of their complaint, the plaintiffs allege that the prior arrangement, under which any member of the Hackbarth family had unrestricted access to the cottage, "has become unworkable and inequitable in that there have been numerous incidents of overcrowding due to simultaneous use of the cottage by several beneficiaries and their guests. It has also resulted in an unpredictable pattern of use and a lack of privacy and quiet enjoyment thereby causing disagreements and dissatisfaction among the beneficiaries." Paragraph 8 explains: "Thus, to ensure that all beneficiaries have an equitable opportunity to use and enjoy the cottage, the plaintiffs, as a majority of trustees, have decided to adopt and implement a[n] exclusive use arrangement during the summer months of July and August for the duration of the trust."
The "overcrowding" here was largely subjective. If a beneficiary from one branch of the family found himself in the cottage with the defendant, that beneficiary was not comfortable, and complained of a lack of privacy. Clearly, the plaintiffs and Clifford's children are not friendly with the defendant. The court will not bemoan the inability of family members to all "get along," a phenomenon which, for better or worse, has for over two centuries enriched and enlarged Connecticut case law. For reasons that were not entirely disclosed in the evidence but are now painfully obvious, no member of the other branches of the Hackbarth clan wants to share his time in this cottage with the defendant. This is so without any suggestion that the defendant ever overtly misbehaved. However, members of the Hackbarth family did complain that when they were in the cottage with the defendant there was tension and that they had only a superficial relationship with the defendant.
The plaintiffs' entitlement to injunctive relief, however, is not dependent on their showing overcrowding by some objective standard. This is an action for an injunction, not an action for permission to adopt the exclusive use arrangement for a particular reason. The exclusive use arrangement has already been adopted, and the defendant threatens to use the cottage in derogation of that arrangement. An allegation or evidence of the particular reason why the plaintiffs enacted the arrangement is unnecessary and need not be proved. A "plaintiff is obliged to prove only those facts that are necessary elements of its claim; it need not prove facts it unnecessarily pleaded that are not elements of its cause of action." 29 Am.Jur.2d, Evidence § CT Page 7157 158; see Nikitiuk v. Pishtey, 153 Conn. 545, 552, 219 A.2d 225
(1966) (where existence of a fact is necessary for a party to succeed, he must ordinarily prove it.).
Indeed, some beneficiaries would not use the cottage without the enforcement of that arrangement. Considerable discretion in the management of the trust is conferred by the trust instrument on the trustees. Article III of the trust instrument states: "The Trustees shall hold [and] manage . . . the trust property., Article VII provides: "The Trustees shall have all the powers granted pursuant to General Statutes § 45-100e [now §45a-234], in addition to other powers granted in the instrument." "When discretion is given to a trustee, his exercise of it is subject to the control of the court to the extent, and only to the extent, that there has been an abuse of discretion."Bridgeport v. Reilly, 133 Conn. 31, 3G-37, 47 A.2d 865 (1946); see Restatement (Third), Trusts, Prudent Investor Rule § 187 (1990) (same). "The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental. . . ." Russell v.Russell, 109 Conn. 187, 198, 145 A. 648 (1929). While they did not prove that there existed, by any objective standard, overcrowding, the plaintiffs did prove by a fair preponderance of the evidence that the new use arrangement significantly promoted the beneficiaries use and enjoyment of the cottage. The court cannot find that the trustees abused their discretion or otherwise acted wrongfully in enacting the exclusive use arrangement.
 V
Finally, the defendant claims that the exclusive use arrangement adopted by the plaintiffs is violative of the intent of the trust which, in Article III B, provides that the trust's "real property . . . shall be maintained and used as a summer residence for the members of the Hackbarth family." The defendant contends that the exclusive use agreement is violative of this provision. The defendant, however, does not argue that the plaintiffs were required to maintain the prior arrangement whereby the cottage was open for use by all Hackbarth family members all the time. Rather, the defendant argues: "If the plaintiff could prove that an exclusive use arrangement is necessary for all beneficiaries to enjoy the property equally, as alleged, they would have to divide the months of July and August among all beneficiaries equally. This would give each beneficiary CT Page 7158 3.27 days to use the property for the months of July and August. The plaintiffs who have a total of three beneficiaries would have approximately ten (10) days for their exclusive use, rather than one month which they have allotted themselves under the exclusive use arrangement."
"It is well settled that in the construction of a testamentary trust, the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition."Gimbel V. Bernard F. Alva B. Gimbel Foundation, Inc.,166 Conn. 21, 22, 347 A.2d 81 (1974).
It is unnecessary to determine whether this rule is also applicable to the construction of an inter vivos, or living, trust. Except for the text of the trust instrument and testimony that it was executed when the settlor was elderly, there was little other evidence presented showing the circumstances surrounding the settlor when the instrument was executed.[5]
Thus, in the final analysis, the court is left with the intent of the settlor as expressed in the trust instrument itself. The trust mandated that the cottage be maintained as a summer residence for the members of the Hackbarth family and conferred broad powers on the trustees pursuant to General Statutes § 45a-234. Trustees "have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner." Hoffman v. First Bond Mortgage Co., Inc.,116 Conn. 320, 326, 164 A. 656 (1933). In light of the broad discretion conferred on the trustees by the trust instrument, the court cannot find that the only exclusive use arrangement the plaintiffs could have reasonably enacted was the 3.27 days per beneficiary proposal advocated at trial by the defendant. This is so even though there are now more beneficiaries who are heirs of the defendant than are heirs of either plaintiff or of Clifford. Cf. Clement V. Larkey, 314 Ark. 489, 493, 863 S.W.2d 580, 582
(1993).[6] The court already has determined, supra, that it was not unreasonable for the plaintiffs to enact an arrangement that CT Page 7159 allowed other beneficiaries to use the cottage without the defendant using it concurrently. The balance of equities clearly favors the plaintiffs.
Judgment may enter in favor of the plaintiffs, permanently enjoining the defendant from using the cottage structure at Indian Cove, Guilford, Ct. during the months of July and August of each year except in accordance with the arrangements adopted by the majority of the trustees.
BY THE COURT
Bruce L. Levin, Judge of the Superior Court