INVESTMENT COMPANY INSTITUTE, Plaintiff,

v.

C.T. CONOVER, et al., Defendants.

Civ. A. No. 83–0549.

United States District Court, District of Columbia.

Nov. 8, 1984.

---

Harvey L. Pitt, Henry A. Hubschman, and David M. Miles of Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C. and Matthew P. Fink, Gen. Counsel, Thomas D. Maher and Catherine L. Heron, Asst. Gen. Counsel, Investment Company Institute, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., U.S. Dept. of Justice, Brian W. Smith, Ronald R. Glancz, L. Robert Griffen, Deborah S. Hechinger, Eric Thompson, Andrew J. Levinson and Ginger S. Barnum, Washington, D.C., for defendant Comptroller.

Arnold M. Lerman, Michael S. Helfer, Christopher R. Lipsett and Daniel M. Drory of Wilmer, Cutler & Pickering, Washington, D.C., for defendant-intervenor Citibank, N.A.; John R. Roche, Shearman & Sterling, New York City, of counsel.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

This action for declaratory and injunctive relief challenges an October 28, 1982, final Ruling (the "Ruling") issued by the Comptroller of the Currency (the "Comptroller") which approved a plan by Citibank, N.A., to establish a "Collective Investment Trust" for individual retirement account (IRA) trust assets exempt from taxation under · the Employee Retirement Income Security Act ("ERISA"), 26 U.S.C. § 408. Plaintiff Investment Company Institute is a national association of open-ended investment companies, their investment advisors, and principal underwriters. Plaintiff claims that the Ruling allows Citibank to establish a "mutual fund" in direct contravention of the prohibitions against banks becoming involved in the sale and marketing of securities found in the Glass-Steagall Banking Act of 1933 ("Glass-Steagall"), 48 Stat. 162 (codified as amended in various sections of 12 U.S.C.), one of several depression-era pieces of legislation designed to restore and maintain public confidence in financial institutions. Defendants counter that Citibank's Common Investment Trust, as authorized by the Comptroller's Ruling, is not a prohibited mutual fund, but a common trust fund which does not violate the strictures of Glass-Steagall, and which is in any event specifically authorized by statute in ERISA. There being no genuine issue of material fact present in this case, the parties have filed cross-motions for summary judgment.

## STATUTORY AND REGULATORY BACKGROUND

In 1974, Congress enacted the Employee Retirement Income Security Act ("ERISA"). As part of ERISA, the Internal Revenue Code was amended to add § 408, which permits qualified individuals to deduct from taxable income up to a specified amount (currently $2,000 annually, not to exceed 100% of salary), I.R.C. § 408(a)(1). Such tax-deductible contributions and earnings on trust assets are not taxed until they are distributed or withdrawn. *Id.,* § 408(d)(1). Withdrawals are not permitted until the individual establishing the account dies or reaches the age of 59½, without a 10% tax penalty being imposed. I.R.C. § 408(f)(1). In addition, § 408(a)(2) requires that only banks and other institutions which receive specific approval of the Secretary of the Treasury may serve as trustees for IRA trust assets. These IRA trust assets may only be commingled in a common trust fund or common investment fund. I.R.C. § 408(a)(5).

In addition to the statutory framework laid out by ERISA, there is another regulatory scheme applicable to this case. 12 C.F.R. § 9.18 contains the Comptroller's regulations relating to the establishment and operation of collective trusts by national banks with trust powers. Under these regulations, a national bank acting as trustee, or in a similar capacity, may invest funds held in that capacity in a common trust fund. 12 C.F.R. § 9.18(a)(1). Similarly, 12 C.F.R. § 9.18(a)(2) permits a national bank acting in a fiduciary capacity for retirement or similar trusts exempt from federal taxation to invest collectively any funds so received. Retirement fund assets may also be invested in common trust funds. 12 C.F.R. § 9.18(b)(2).

Finally, the Glass-Steagall Act provides that national banks are forbidden to engage in the securities business. Section 16 of Glass-Steagall provides that national banks shall not underwrite or deal in "securities or stock." 12 U.S.C. § 24 (Seventh). Section 21 of the Act in turn prohibits any person in the business of selling, underwriting or distributing "stocks, bonds, debentures, notes or other securities" from engaging "at the same time to any extent whatsoever" in the business of taking deposits, except to the extent permitted in Section 24 of the Act. 12 U.S.C. § 378(a)(1). The term "securities" is not defined anywhere in Glass-Steagall.

## FACTUAL BACKGROUND

In 1982, Citibank, which serves as trustee for IRA trusts, applied to the Comptrol-

ler to establish a common trust exclusively for IRA trusts for which it is trustee. This common trust is entitled the Collective Investment Trust for Citibank IRAs ("CIT"). It establishes optional portfolios into which an individual may, by way of a written Trust Agreement with Citibank, require the bank to place his IRA trust assets. The CIT is one of several options which an IRA settlor may choose when selecting Citibank as IRA trustee. Such Trust Agreement is freely revocable subject to the penalty provided for in I.R.C. § 408. However, assets may be freely transferred between portfolios within the CIT, as well as between any of Citibank's other IRA trust options, free from penalty. The purpose of the CIT is to provide an opportunity for the individual small IRA trust to be combined with assets of many other IRA trusts to create a sum large enough to allow the kind of diversification and professional financial management which it otherwise would be unable to obtain.

The interest of each IRA trust in the CIT is expressed by "units of beneficial interest." These units are available only to IRA trusts of which Citibank is trustee and are not transferable. There is no charge for the acquisition or withdrawal of these units. Citibank acts as trustee and investment advisor of the CIT and receives a monthly fee based partly on the net value of the CIT's portfolios.

The Securities and Exchange Commission has at various times stated its opinion that the units of interest in collective funds such as the one in issue here are securities within the meaning of the federal securities laws. Citibank, while not conceding that the Commission is correct on this point, and without raising that particular issue here, filed registration statements with the Commission to have the CIT registered as an investment company under the Investment Company Act of 1940, and to register the units of beneficial interest as securities under the 1933 Act. Citibank asserts that this was done merely to avoid a long and costly exemption proceeding before the Commission.

Citibank then sought approval of the CIT from the Office of the Comptroller. In its application, Citibank asked for a ruling that the CIT did not violate the prohibition against national banks marketing securities, found in §§ 16 and 21 of Glass-Steagall. In addition, Citibank asked to be exempted from those parts of the Comptroller's regulations which might be in conflict with those of the Investment Company Act.

### THE COMPTROLLER'S RULING

On October 28, 1982 the Comptroller issued a detailed and reasoned final Ruling which approved the Citibank CIT as being lawful under 12 C.F.R. Part 9 and not in conflict with the proscriptions of Glass-Steagall. The Comptroller initially determined that the CIT was a proper exercise of Citibank's fiduciary powers under either 12 C.F.R. § 9.18(a)(1) or (a)(2). The CIT was found to fall under the former provision because the assets invested therein are received and held by Citibank in trust. The latter provision was found also to apply as the trust assets invested in the CIT are retirement plan assets. (Ruling 4–5). Next, the Comptroller found that such a collective investment of IRA trust assets was specifically authorized by ERISA. (R. 8). The Ruling went on to state the Comptroller's finding that "there is no Glass-Steagall Act impediment to a bank collectively investing IRA trust assets." (R. 9).

In so finding, the Comptroller distinguished this case from that presented in *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) ("Camp"). In that case, the Comptroller had approved a commercial bank's plan for the collective investment of managing agency funds not held by the bank in trust. *Id.* at 622, 91 S.Ct. at 1094. The Supreme Court invalidated the Comptroller's ruling, holding that such a collective investment of managing agency assets held by a national bank violated Glass-Steagall's prohibition against national banks issuing, marketing or underwriting securities. The Comptroller found that the "most significant difference" between the invalid fund in *Camp*, and the Citibank CIT was that the latter involves assets held in trust, which would render it lawful under the

**1500**

Supreme Court's analysis in *Camp*. (R. 10). The Comptroller found that the CIT is "the formal manifestation of a traditional banking service," i.e. trust activities, (R. 15), unlike the service offered in *Camp*. Finally, the Comptroller concluded that the hazards which the Supreme Court noted in *Camp* as being behind the necessity for the prohibitions in Glass-Steagall, were "nonexistant or negligible in the context of commingled IRA trusts." (R. 12).

For the reasons set forth in discussion which follows, this Court declines to invalidate the Comptroller's Ruling. Instead, it is the opinion of this Court that the Comptroller acted reasonably when he made his Ruling. The Citibank CIT does not violate the Glass-Steagall Act in that the units of beneficial interest are not "securities" under that Act, and the same holding enunciated in *Camp*, which Glass-Steagall was intended to prevent, are simply not present in this case, the CIT presents no other violations of the Act, and, finally, the collective investment of IRA trust assets is specifically authorized by ERISA.

## I). THE COMPTROLLER'S CAREFUL AND REASONED DECISION IS ENTITLED TO GREAT WEIGHT.

■ Plaintiff would have this Court accord little weight to the Comptroller's interpretation of Glass-Steagall. As support for this contention, plaintiff points to *Securities Industry Association v. Board of Governors*, — U.S. —, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984) ("Becker"). In that case, however, the Supreme Court, while invalidating the sale of commercial paper by a national bank as being a "security" under Glass-Steagall, held that the Court accords "substantial deference" to an interpretation by an administrative agency charged with administering the Act "whenever its interpretation provides a reasonable construction of the statutory language and is consistent with legislative intent." *Becker, supra* at 2983; *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1965); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In *Camp*, the Supreme Court held that this principal of according great deference to any reasonable construction of a regulatory statute by the agency charged with the statute's enforcement finds particular application to the Comptroller of the Currency in regards to the Glass-Steagall Act. *Id.* 401 U.S. at 626–27, 91 S.Ct. at 1097; *NYSE v. Smith*, 404 F.Supp. 1091, 1096 (D.D.C.1975). This was reiterated in *Securities Industry Ass'n v. Board of Governors*, — U.S. —, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984), decided the same day as *Becker*. Nothing in *Becker* acts to change this principal as applied to the Comptroller. The Court finds that the Comptroller's interpretation was indeed reasonable, and will be accorded the weight it so deserves.

Plaintiff then points out the language in *Becker* which admonishes against *post hoc* rationalizations by counsel, specifically those in *Becker* involving some of the same arguments put forth by counsel in the present case. Defendant apparently would have the Court consider most, if not all, of the defendants' arguments to be *post hoc*, and therefore entitled to little or no weight. The Court is not persuaded by plaintiff's view of the holding in *Becker*. Unlike the present case, the counsel in Becker was advancing an argument not present in the agency ruling. The Supreme Court justifiably limited its consideration to only those arguments put forth in the Ruling itself. Here, there are no *post hoc* rationalizations being thrust upon this Court, merely detailed arguments raised and answered by the Comptroller in his Ruling. *See, Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–169, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962). Therefore, the Court declines to ignore any of the defendants' arguments based upon the plaintiff's interpretation of *Becker*.

## II) THE COMPTROLLER ACTED REASONABLY IN INTERPRETING GLASS–STEAGALL AS NOT PROHIBITING THE COLLECTIVE INVESTMENT FUND PROPOSED BY CITIBANK.

a) The "units of beneficial interest are not "securities" under Glass-Steagall.

■ The Comptroller's Ruling found that the units of beneficial interest in the Citi-

bank CIT were not "securities" under the Glass-Steagall Act. Plaintiff argues that the Comptroller was in error in this interpretation. As the definition of "securities" exists nowhere in Glass-Steagall itself, the issue, as noted above, is whether the Comptroller's interpretation was reasonable in light of the purpose and intent of the statute. *Becker, supra.* Initially, plaintiff argues that since the CIT and its units of beneficial interest have been registered with the SEC, that in effect acts as an admission by Citibank that they are dealing in the marketing of securities. This argument is without merit. Although it is clear that the term "securities" is broadly enough defined by the securities laws to encompass interests in common trust funds, *See,* 15 U.S.C. § 77b(1), it is also equally clear that not all such funds are to be considered securities for Glass-Steagall purposes. *Camp, supra,* 401 U.S. at 638, 91 S.Ct. at 1102. The Court in *Camp* drew a distinction between trust assets received "for a true fiduciary purpose rather than for investment," *Id.,* the former being exempt from the Act. Thus, it does not necessarily follow that the mere fact of registration under the securities laws is proof that the fund or interest so registered is a security for Glass-Steagall purposes.

The distinction drawn in *Camp,* between fiduciary purpose and investment, formed the crux of the holding in *Investment Company Institute v. Conover, et al.,* 593 F.Supp. 846 (N.D.Cal.1984) ("ICI"). In that case, plaintiff was challenging a separate but identical Ruling by the Comptroller authorizing two California banks to offer the same service involved in this case. The Northern District of California found the funds in that case to be solely for the purpose of investment and invalidated the Comptroller's Ruling. Plaintiff would have this Court do the same here. However, this Court believes, with great respect for the careful analysis shown by the Court in *ICI,* that the conclusion there was in error. By focusing only on whether the funds in question fit into the mold of a "common trust fund," the Court in *ICI* failed to recognize that both Glass-Steagall and ERISA

permit collective investment by banks of trust assets held either in "common trust funds" or "common investment funds." I.R.C. § 408(a)(5). Such "investment" of assets of statutory tax exempt retirement plans is a traditional banking function, as evidenced by the Comptroller's own long-standing regulations, 12 C.F.R. § 9.18 *et seq.,* and the legislative history of ERISA.

ERISA itself is clear on this point, allowing the commingling of IRA trust assets in either a common trust or a common investment fund. I.R.C. § 408(a)(5). Such funds have long been considered traditional banking services for retirement assets, and there is a clear indication that Congress fully intended IRA assets to be "invested" in this manner. The Conference Report on ERISA, quoted in part by the Court in *ICI,* goes on to state that "the conferees intended that, for the purposes of diversification of investments, the assets of qualified individual retirement accounts may be pooled with the assets of qualified § 401(a) trusts..." H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess. 337 (1974), U.S.Code Cong. & Admin.News 1974, 4639, 5117. Thus, Congress evidenced its intention that IRA trusts were to be treated by banks in accordance with their recognized authority to collectively invest other statutory retirement plan assets. The legislative history of ERISA goes on to show Congress' explicit understanding that it is "common practice for banks.... to maintain pooled investment funds for [retirement] plans." H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess. 316, U.S.Code Cong. & Admin.News 1978, 5096. Thus, it is clear that the funds invalidated by the Court in *ICI,* and at issue here, were considered by Congress to be a natural extension of traditional banking activities and therefore the units of beneficial interest are not "securities" in violation of Glass-Steagall.

b) Glass-Steagall does not prohibit a National Bank from establishing collective investment trusts for IRA trust assets.

As noted above, Glass-Steagall prohibits national banks from marketing, issu-

ing, or underwriting any issue of security or stock. 12 U.S.C. § 24. Conversely, Glass-Steagall also forbids anyone "in the business of issuing, underwriting, selling, or distributing.... stocks, bonds, debentures, notes, or other securities, to engage at the same time to any extent whatsoever in the business of receiving deposits." 12 U.S.C. § 378(a)(1). In short, banks are not to be involved in the securities field and those involved in the securities field are not to act as traditional banks. The Comptroller, using his expertise as the agency administrator responsible for the application of the Act, and in a carefully reasoned and crafted Ruling, interpreted this to mean that Glass-Steagall poses no impediment to the Citibank CIT. The Court, as discussed fully below, finds this interpretation reasonable, and will not overturn it.

Initially, the forgoing discussion relating to funds such as these being considered by Congress to be a natural extension of traditional banking functions is dispositive in and of itself. Glass-Steagall says banks must act like banks alone. Here, Congress has shown its recognition that the collective investment of IRA trust assets is to be considered the same as pooled investment of other types of retirement plans, which have always been considered to be a traditional banking function. *Camp, supra* at 638, 91 S.Ct. at 1102. *See also*, H.R.Conf. Rep. No. 1280, 93rd Cong., 2d Sess. 316 (1974).

Here, Citibank is selling its fiduciary services, consistent with its authority under ERISA. There is no sale of prohibited "investments," due to the fiduciary nature of the IRA trust. *Camp*, supra at 624–25, 91 S.Ct. at 1095–96. ERISA imposes upon Citibank a set of fiduciary duties and obligations which ensure that Citibank is engaged in a proper banking and fiduciary service. Unlike the fund struck down in *Camp*, the Citibank CIT is bound by the restrictions set forth in ERISA on all IRA trusts. These restrictions assure that Citibank cannot serve simply as a vehicle for investment, as was the case in *Camp*. These restrictions, as the Comptroller noted in his Ruling, include restrictions on

self-dealing of various sorts, I.R.C. § 408(a)(5); requirements of reports and accounting, I.R.C. § 408(i); and provisions which prevent a bank as trustee from causing any forfeiture of IRA trust assets. I.R.C. § 408, *et seq.* In addition, the IRA settlor himself is constrained by various statutory restrictions such as the $2,000.00 limit on tax-free investment per year. I.R.C. § 408(d), and the 10% tax penalty for withdrawal of IRA assets before reaching the age of 59½. I.R.C. § 408(f). In sum, there exists a strong statutory framework which ensures the fiduciary nature of the Citibank CIT. The Comptroller acted reasonably when he relied on this in his Ruling.

c) The "hazards" which Glass-Steagall was designed to prevent are not present in the Citibank Collective Investment Trust.

■ The Supreme Court in *Camp* enunciated several "hazards" which the Glass-Steagall Act was designed to prevent. Based on the purpose of the Act, the Supreme Court concluded that the managing agency account in *Camp* was replete with these very hazards and struck down the Ruling. The Comptroller's Ruling distinguished the Citibank CIT from the managing agency account in *Camp*, noting that the "fiduciary services being considered here do not present the hazards and potential abuses that Congress sought to avoid when it enacted the Glass-Steagall Act." (R. 9). The Court holds that the Comptroller acted reasonably in making this finding.

In *Camp*, the Supreme Court noted that "[t]he hazards that Congress had in mind were not limited to the obvious danger that a bank might invest its own assets in frozen or otherwise imprudent stock or securities investments." *Id.* at 630, 91 S.Ct. at 1098. What Congress was also focusing on were some of the more "subtle hazards that arise when a commercial bank goes beyond the business of acting as a fiduciary.... and enters the investment banking business." *Id.* Included in the list of "hazards" Glass-Steagall was intended to

prevent are the risk of a bank making unsound loans, to its "affiliate" or to others connected with the investment; that a bank's "reputation for prudence and restraint" would be lent to its securities business, thus glossing over the risks inherent in such endeavors; and, finally, the risk that a bank's "promotional interest" would lead to an inability to give its customers sound and impartial financial advice. *Id.* at 630–32, 91 S.Ct. at 1098–99. Finding these very dangers present in the managing agency account, the Supreme Court declared it invalid.

In the present case, however, the situation is quite different than in *Camp.* The Court agrees with the Comptroller's Ruling that the dangers found in *Camp,* which Glass-Steagall was designed to prevent, are simply not present in this kind of collective IRA trust asset fund. Initially, there is no danger of misuse of a bank's lending power to support speculative securities activity. Citibank cannot lend money to its CIT. 12 C.F.R. § 9.18(b)(8)(i). Further, the Comptroller's regulations and ERISA itself preclude Citibank from making a loan to an individual holder of a unit of beneficial interest in the fund. 12 C.F.R. § 9.18(b)(8)(i), I.R.C. § 408(a)(4). Finally, as the Comptroller found, it is "implausible" that Citibank would put its own assets at risk by making unsound loans to companies whose securities the CIT owns. The entire structure of the fund is towards diversification. Any such loans would only minimally affect the value of the fund itself.

Secondly, there is no danger of the bank using its reputation to hide the dangers involved with the securities market. As noted above, this is a fiduciary relationship involving tightly regulated and statutorily restricted IRA trust assets. The safeguards built into ERISA itself act so as to protect the IRA account holder in a way the ordinary securities investor could never be protected. The IRA account holder knows that his money is protected. That is precisely why he has opened such an account. The securities investor, on the other hand, ought to be aware of the risk he is taking and so ought not to be in a position to be fooled into thinking his money is just as safe as if deposited. That is one of the purposes behind Glass-Steagall, but it simply is not present here.

Third, and finally, the "promotional interests" hazard is also "non-existent or negligible." (R. 9). It is the IRA settlor who directs, in writing, which of several available IRA investment options his trust assets are to be placed into. (R. 3). The CIT is only one of many choices. The bank has no "salesman's stake" in selling units in the CIT. What it is selling is its services as an IRA trustee in general. Moreover, Citibank imposes no sales charge or commission to IRA trusts to acquire units in the CIT. (R. 12). The Court agrees with the Comptroller's finding that this creates no greater or different risks "than when a bank engages in its customary fiduciary functions." (R. 13). There exists further no greater risk to the bank's solvency, good name and good will should the CIT fail than if a traditional fiduciary trust were to likewise fare badly. (R. 12). For all these reasons, the Comptroller was correct and acted reasonably when he ruled that the Citibank CIT involved none of the Glass-Steagall hazards enumerated in *Camp.*

d) The fact that the Citibank Collective Investment Fund is advertised does not make it illegal under the Glass-Steagall Act.

■ Plaintiff makes much of the fact that Citibank has aggressively advertised the Collective Investment Fund to the public. Plaintiff argues that this is a prohibited act of "marketing" under Glass-Steagall, and shows further that the fund involves "securities" under that Act. The Court, however, finds this argument to be strained at best, and completely inaccurate.

Without repeating the analysis gone through above, the Court reiterates that the units of beneficial interest in the Citibank CIT are not "securities" under the Glass-Steagall Act regardless of their be-

ing "mass-marketed." Citibank is not advertising the CIT itself. Rather, Citibank is marketing its entire IRA trust service. The advertising of the CIT is used to attract customers to utilize Citibank as their IRA trustee. There is nothing improper about a bank advertising its various services to the public. *Franklin National Bank v. New York*, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1953). *See also, NYSE v. Smith*, 404 F.Supp. 1091, 1097 (D.D.C. 1975), *vacated on other grounds sub nom., NYSE v. Bloom*, 562 F.2d 736 (D.C.Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978).

Moreover, there is nothing in ERISA, Glass-Steagall or any other statute which prohibits the marketing of a bank's IRA trust services by way of its advertising its collective investment fund for IRA accounts. The only limitation on advertising any common trust is inapplicable to the Citibank CIT since it is a fund consisting solely of tax exempt retirement assets. 12 C.F.R. § 9.18(a)(1), (2); (b)(5)(v).

Finally, to find that the advertising of such IRA trust services was in violation of Glass-Steagall would be to totally frustrate the purpose of ERISA. Congress was concerned with encouraging retirement savings. In order to fulfill its mission as a means of reaching such a goal, an IRA account service must be advertised to the general public. Only by the type of "mass-marketing" which plaintiff complains of here will the general public be aware of the opportunities available for beneficial methods of preparing for one's retirement.

## CONCLUSION

For all the reasons above, the Court concludes that the Comptroller acted reasonably when he made his Ruling approving the Citibank Collective Investment Trust for IRA trust assets. There being no genuine issue of material fact in dispute, the Court, by Order of even date herewith, denies plaintiff's motion for summary judgment, and grants the defendants' motions for summary judgment to the extent hereinbefore stated.