**In re Ronald W. HOUCK, Debtor.**

**David A. EISENBERG, Esquire,
Trustee, Plaintiff,**

**v.**

**Ronald W. HOUCK, Defendant.**

**Bankruptcy No. 92–23984.
Adv. No. 93–2282.**

United States Bankruptcy Court,
E.D. Pennsylvania,
at Reading.

April 19, 1995.

Mark C. Van Horn, Allentown, PA, for trustee.

James G. Watt, Allentown, PA, for debtor.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the trustee's complaint for turnover against Debtor. The parties have submitted the matter on the pleadings and briefs.[1] There are no material facts in dispute. The trustee seeks to recover Debtor's interest in an Individual Retirement Account (IRA).[2] Debtor contends that under the United States Supreme Court's decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), and pursuant to 11 U.S.C. § 541(c)(2), the IRA is excluded from property of his bankruptcy estate. We find that the IRA is estate property and that Debtor must turn it over to the trustee.

The parties agree to the following facts: Debtor was employed by Colebrook Farms, Inc., for 15 years before April, 1990. During his employment, he was covered by an ERISA[3] qualified non-contributory defined benefit pension plan. Debtor's employer filed a chapter 11 petition in 1989 and Debtor's employment ended that same year. The pension plan was terminated on April 15, 1990. The termination of the plan was approved by the Internal Revenue Service in September of 1990 and employees were provided with information on alternate investments and rollovers of their interests in the plan. In October of 1990 Debtor received a lump sum distribution of $9,721 from the pension fund. Several days later, Debtor deposited the entire amount in an IRA. Since then, he has held other jobs. Through his present employer Debtor is covered by a non-contributory pension plan that does not

---

1. The parties waived scheduled oral argument, asserting that it was unnecessary and consenting to submission for decision on the pleadings.

2. The trustee also sought turnover of Debtor's interest in a time share and a savings bond. In his answer to the complaint, Debtor consented to the turnover of these two items.

3. ERISA is printed in Title 29 of the United States Code. *See* Pub.L. 100–647, Titles II, III (1988); Pub.L. 101–239, Titles II, VI, VII (1989); Pub.L. 101–508, Title XII (1990); Pub.L. 101–540 (1990); Pub.L. 102–89 (1991); Pub.L. 102–229, Title II (1991); Pub.L. 103–66, Title IV, Subtitle D (1993).

accept rollover contributions. Debtor filed this bankruptcy on October 20, 1992, two years after the pension distribution.

Debtor argues that because the IRA was created by a rollover from an ERISA qualified plan to which § 541(c)(2) would apply, the IRA also is protected. Section 541(c)(2) of the Bankruptcy Code provides that

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that the anti-alienation provisions of ERISA qualified plans constitute restrictions on transfer enforceable under "applicable nonbankruptcy law" in accordance with 11 U.S.C. § 541(c)(2).[4] The Supreme Court overruled those lower court decisions that construed the § 541(c)(2) limitation to apply only to spendthrift trusts under state law.

In order to decide this issue, we must determine (1) whether distributed pension funds are excludable from the bankruptcy estate; (2) whether the rollover of a distribution of funds which were in an ERISA qualified plan to an IRA continues the protected status of the funds; (3) whether there is a restriction on transfer of an IRA that qualifies the IRA for exclusion from the estate as Debtor's "beneficial interest in a trust"; and (4) whether the IRA is a trust within the meaning of 11 U.S.C. § 541(c)(2).

I. *Are Distributed Pension Funds Protected From Inclusion in the Bankruptcy Estate?*

■ In the Third Circuit, payouts from ERISA plans constitute a distribution, subject to the reach of creditors. In *Velis v. Kardanis*, 949 F.2d 78 (3d Cir.1991) (rehearing denied), the question was whether a debtor could exclude from the estate his interests in a pension plan, a Keogh plan, and an IRA. In that case the debtor had borrowed from the plans. The Court of Appeals for the Third Circuit stated:

Even if pension plan assets in the hands of a [pension] trustee are beyond the reach of creditors because not a part of the debtor's estate under § 541(c)(2), distributions made from the plan to the debtor would not enjoy such protection, in the absence of exemption under § 522(d)(10)(E).

949 F.2d at 81–82.

Although *Velis v. Kardanis* predated *Patterson v. Shumate*, the Court of Appeals has had occasion to address the issue since *Shumate*. In *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52 (3d Cir.1994), the court expanded its position in *Velis v. Kardanis* to a rollover situation. In *Colville* the court stated:

We ... do not find the reasoning of *Velis* to be limited solely to the situation where funds have been distributed and then immediately invested in non-liquid assets.

16 F.3d at 55.

In *Colville*, the pension fund sought to recover overpayments from a plan beneficiary. The beneficiary refused to reimburse the fund so the fund withheld early retirement benefits. The court reiterated its recognition of the difference between funds in the hands of an ERISA plan trustee and funds that have been distributed, even when those "funds have been distributed and then immediately invested in non-liquid assets". 16 F.3d at 55. In *Colville* the Court of Appeals panel rejected the distinction drawn by the district court between distributed funds that were illiquid and those that were placed in more readily accessible forms.

The distinction the district court draws in finding *Velis* inapplicable to the facts presented here appears to be unworkable. Investments, as opposed to more readily accessible funds, such as those in a bank account, may or may not be a source of a

---

4. *Patterson v. Shumate* was decided on the basis of 29 U.S.C. § 1056(d)(1) which restricts transfer of a "beneficial interest" in a trust. A trust is not a "qualified trust" for purposes of § 401 of the Internal Revenue Code unless it contains, *inter alia*, an anti-alienation clause. 26 U.S.C.

§ 401(a)(13)(A). *See also* notes 6, 13, *infra*. The anti-alienation clause required by ERISA was found to be a "restriction on transfer" enforceable in bankruptcy for purposes of 11 U.S.C. § 541(c)(2). However, ERISA does not apply to IRAs.

stream of income that could be used for current living expenses that was envisioned in *Patterson [v. Shumate]*. Under the theory employed by the district court, would annuity or dividend-paying stock investments be subject to the anti-alienation provision, or would they be subject to execution and claims of creditors in bankruptcy? The reasoning of the district court leaves this question unanswerable.

*Colville*, 16 F.3d at 55.

The court agreed with a decision from the Tenth Circuit concluding that the anti-alienation provision of a plan applies only to actions against the plan itself, not to actions against the beneficiary. *See Guidry v. Sheet Metal Workers Int'l Ass'n, Local 9*, 10 F.3d 700 (10th Cir.1993), *aff'd* in pertinent part on rehearing *en banc Guidry v. Sheet Metal Workers National Pension Fund*, 39 F.3d 1078 (10th Cir., 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556, and —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). Once the funds have been distributed, the anti-alienation restriction no longer applies. *Colville*, 16 F.3d at 55–56. In *Guidry* the Court of Appeals for the Tenth Circuit, *en banc*, affirmed the panel holding that distributions from an ERISA qualified plan are subject to attachment. The court compared 29 U.S.C. § 1056(d)(1), which requires that anti-alienation provisions be included in a plan, to the Social Security Act, 42 U.S.C. § 407(a). The Social Security Act prohibits attachment or garnishment of the right to " 'moneys paid or payable' to a beneficiary." 39 F.3d at 1083. Because ERISA contains no such prohibition with respect to distributions, the court concluded that the distributed funds were not protected by the applicable law. On the basis of the cited cases, the distributed funds at issue are part of the estate unless the rollover changes the result.

## II. What is the Effect of the Rollover of the Distributed Pension into an IRA?

In the case at bar, Debtor's distributed interest in the Colebrook Farms ERISA-qualified plan was rolled over to an IRA. Under *Velis* and *Colville*, the distribution rendered the funds accessible to creditors, even if Debtor chose a rollover that could not be readily liquidated. In this case, the rollover to an IRA consisted of a deposit in a bank in the form of a savings account. In *Nationsbank of North Carolina v. Shumate*, 45 F.3d 427 (TABLE, text at 1994 WL 717544 (4th Cir. (Va.), 1994), the court of appeals held that ERISA's anti-alienation protection does not continue after actual distribution of the pension, even during the 60–day rollover period, when the pension funds are deposited into a bank account. The IRA in the matter before us is a bank account to which Debtor has immediate and unrestricted access, notwithstanding certain provisions in the documents that established the account, which will be addressed below. We find that the rollover does not afford the protection Debtor seeks.[5]

## III. Is the IRA Subject to a Restriction on Transfer Enforceable Under Applicable Nonbankruptcy Law?

In *Patterson v. Shumate*, the Supreme Court noted that IRAs are specifically excepted from ERISA's anti-alienation[6] requirement. 29 U.S.C. § 1051(6). The Court stated that IRAs "could not be excluded [from property of the estate] under § 541(c)(2) because [they] lack transfer restrictions enforceable under 'applicable nonbankruptcy law'." 504 U.S. at 763, 112 S.Ct. at 2249. In this case, however, the bank documents provide:

*Assignment, Pledge, Attachment, etc. of Custodial Account:* No interest, right or claim in or to any part of the Custodial Account or any payment therefrom shall be assignable, transferable, or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment,

---

5. We note that we are not faced with a rollover into another ERISA qualified plan and we intimate nothing regarding the § 541(c)(2) exclusion on facts not before us.

6. "Alienate" is defined as "[t]o convey; to transfer the title to property." BLACK'S LAW DICTIONARY at 72 (6th ed. 1990). "Transfer" is

defined as "[a]n act of the parties, or of the law, by which the title to property is conveyed from one person to another. The sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein, or with the possession thereof. . . ." *Id.* at 1497.

attachment, execution, or levy of any kind [and] the Custodian shall not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute, or anticipate the same, except to the extent required by law.

IRA Custodial Agreement and Disclosure Statement ¶ 8.15. The documents, therefore, contain a prohibition on transfer, pledge, assignment, et cetera, of the Individual Retirement Account and distributions therefrom.[7] We must decide (1) what the "applicable nonbankruptcy law" is and (2) whether the anti-alienation clause contained in the IRA disclosure statement is "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law that is enforceable in a case under" title 11. 11 U.S.C. § 541(c)(2). We first examine federal law.

### A. Section 408 of the Internal Revenue Code

■ The applicable federal nonbankruptcy law is § 408 of the Internal Revenue Code, 26 U.S.C. § 408, which sets forth the requirements for creation of an IRA. IRAs are special forms of statutory trusts, established for purposes of tax deferral.[8] IRAs are not spendthrift trusts, and the Internal Revenue Code acknowledges that they are not "trusts" as that term is commonly used. *See* 26 U.S.C. § 408(h). *See also Estate of Davis,*

171 Cal.App.3d 854, 217 Cal.Rptr. 734 (1985). Before *Patterson v. Shumate,* many courts limited the application of § 541(c)(2) to state spendthrift trusts in which the debtor's ability to reach the corpus had been entirely negated.[9]

*Patterson v. Shumate* determined that "ERISA qualified" pension plans also met the § 541(c)(2) standard. *Patterson v. Shumate* did not specify what elements are essential for a plan to constitute an "ERISA-qualified plan".[10] Other courts have addressed the issue. In *In re Hall,* 151 B.R. 412, 417 (Bankr.W.D.Mich.1993), the bankruptcy court held that

> For a plan to be ERISA-qualified it must: (1) be a tax qualified plan under the Internal Revenue Code § 401(a); (2) be subject to ERISA; and (3) have an anti-alienation provision as required by ERISA 29 U.S.C. § 1056(d)(1).

*In re Hall,* 151 B.R. at 419. *See also In re Nolen,* 175 B.R. 214, 217 (Bankr.N.D.Ohio, 1994) ("pension plans must be both ERISA qualified and tax qualified to fall within the scope of 11 U.S.C. § 541(c)(2)"). We agree and find that IRAs do not meet the standard set forth in *Hall.*

IRAs are tax qualified, 26 U.S.C. § 408, but they are not subject to ERISA and are specifically excepted from ERISA's anti-alienation requirement.[11] *See* 29 U.S.C.

---

7. *But see Velis v. Kardanis,* 949 F.2d 78 (3d Cir.1991) (rehearing denied) (distributions are not protected from the reach of creditors even though the plan is so protected).

8. If a depositor engages in a transaction prohibited by 26 U.S.C. § 4975, the IRA will cease to be an individual retirement account and the funds in the account will be taxed as having been distributed. 26 U.S.C. § 408(e)(2). Section 4975 provides that the term "prohibited transaction" means sales, loans, and certain other acts between a plan and a "disqualified person" (defined in § 4975(e)(2)). 26 U.S.C. § 4975(c).

9. In order to create what we shall term, for purposes of the analysis of the § 541(c)(2) exclusion in this opinion, a "true" trust, there must be a designated beneficiary, a trustee, a fund sufficiently identified to enable title to pass to the trustee, and actual delivery to the trustee with the intent of passing title. *See* BLACK'S LAW DICTIONARY at 1509 (6th ed. 1990). IRAs lack a trustee and delivery of title to the trustee. In this case, moreover, the bank is denoted a "custodian" and

the agreement is between "Depositor" and "Custodian". *See* Section VI: Individual Retirement Custodial Account. *See also* IRA Custodial Agreement and Disclosure Statement at 2. There is no trustee and there is no separation of title and beneficial interest: the depositor holds title to and is the beneficiary of the account. To the extent that the IRA may be deemed to be a trust under state law, it is in the nature of a self-settled trust. Self-settled trusts historically have not been insulated from creditors. *See* discussion of Pennsylvania law, *infra.*

10. It appears that "ERISA qualified" is not an appellation used by tax practitioners. Plans are said to be "tax qualified" and "subject to ERISA". *In re Hall,* 151 B.R. 412, 417 (Bankr. W.D.Mich., 1993).

11. We note that ERISA was enacted to protect employee benefit plans, multiemployer pension plans, and single employer defined benefit pension plans. 29 U.S.C. §§ 1001, 1001a, 1001b. There is no express intent to protect individual

§ 1051(6). *See also* 29 C.F.R. § 2510.3–2(d) ("[f]or purposes of title 1 of the Act [ERISA] and this chapter, the terms 'employee pension benefit plan' and 'pension plan' shall not include an individual retirement account described in Section 408(a) of the [Internal Revenue] Code").[12] Nothing in the Code of Federal Regulations under the ERISA provisions regulates IRAs.[13] Nowhere in the law applicable to the establishment of a valid IRA is there a reference to a requirement that an anti-alienation clause must exist. *See* 11 U.S.C. § 408. *See generally Investment Co. Institute v. Conover,* 596 F.Supp. 1496, 1502 (D.D.C.1984), *aff'd* 790 F.2d 925 (D.C.Cir.1986), *cert. denied sub nom. Investment Co. Institute v. Clarke,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 372 (1986); *In re Damast,* 136 B.R. 11 (Bankr.D.N.H.1991). Distribution from an IRA can occur at any time the depositor desires, subject only to tax consequences. Thus, under federal law, IRAs do not contain restrictions on transfers subject to 11 U.S.C. § 541(c)(2).

### B. *A Contractual Restriction*

■ The question arises as to the effect of an anti-alienation clause when one is included in the agreement between the custodian and the depositor, even though the Internal Revenue Code does not require such a clause to validate the IRA. Federal courts have indicated that IRAs that have no anti-alienation clauses are property of the estate for purposes of § 541(c)(2) of the Bankruptcy Code. *See generally In re Meehan,* 173 B.R. 818, 821 (S.D.Ga.1994) ("[t]he fact that Meehan's IRA contains no transfer restriction obviates

further analysis of § 541(c)(2)"); *In re Slepian,* 170 B.R. 712, 715 (Bankr.S.D.Ala.1994) ("[g]iven that an IRA is not required to have restrictions on alienation and assignment in order for it to obtain tax deferred status, and this IRA has no such contractual provisions, it does not qualify as exempt under [state law] or constitute a trust which has a 'restriction on the transfer of a beneficial interest of the debtor' ").

The cited cases did not concern a contractual restriction on transfer.[14] Under an analysis of federal law, however, we do not find the contractual provision sufficient to exclude the IRA from property of Debtor's estate under § 541. Section 541(c)(2) speaks to transfers of beneficial interests in *trusts.* Nothing in the contract which established the custodial account at issue set up a trust; rather, the contractual language iterates the principle that if any part of the funds in the account is transferred, that portion loses its tax-deferred status. The contractual language does not prevent Debtor from withdrawing the funds and terminating the IRA. Moreover, the restriction directs the custodian not to recognize transfers, etc., "except to the extent required by law". *See* IRA Custodial Agreement and Disclosure Statement at ¶ 8.15. Federal law does not prevent Debtor from closing out the account—it merely imposes a penalty for early withdrawal. Thus, Debtor's ability to withdraw the funds in his IRA is not restricted as it would be if the funds were held in a spendthrift trust or an ERISA qualified plan. Here, Debtor holds both the title to and the beneficial interest in

---

savings plans, even if those plans are established by employers and "certain associations of employees". 26 U.S.C. § 408(c).

**12.** Title 1 of ERISA covers § 401 of the Internal Revenue Code, not § 408.

**13.** The regulations dealing with IRAs fall under Title 26 of the Code of Federal Regulations dealing with the Internal Revenue Code. *See, e.g.,* 29 C.F.R. § 2530.200a–1—Relationship of the Act [ERISA] and the Internal Revenue Code of 1954. This section covers plans under IRC §§ 401(a), 403(a), and 405(a), and not IRAs under § 408. *See also* 29 C.F.R. § 2510.3–3(b) (employee benefit plan excludes "any plan, fund or program, other than an apprenticeship or training pro-

gram, under which no employees are participants covered under the plan.").

**14.** Other cases which have examined the effect of anti-alienation restrictions are inapposite on their facts. *See, e.g., In re Pierce,* 1994 WL 266381 (Bankr.W.D.Pa., June 9, 1994) (debtor's pension funds were still part of an ERISA qualified plan on the bankruptcy filing date); *In re Nudo,* 147 B.R. 68 (Bankr.N.D.N.Y.1992) (state law provides that custodial accounts and rollovers from § 401 plans are conclusively presumed to be spendthrift trusts and debtor, although entitled to withdraw funds from his § 401 plan, had not done so); *In re Dunham,* 147 B.R. 13 (Bankr.E.D.N.C.1992) (on the date of the bankruptcy filing the funds were still in an ERISA qualified plan).

the IRA and retains the ability to transfer funds out of the IRA account, despite his apparent agreement with the bank not to encumber the account itself, as evidenced by the IRA disclosure statement.

We conclude that the contractual anti-alienation clause in the IRA at issue is not the type of "restriction ... in a trust ... enforceable under applicable nonbankruptcy" federal law that is enforceable in a case under 11 U.S.C. § 541(c)(2). *Velis v. Kardanis,* 949 F.2d 78, 82 (3d Cir.1991). *See also In re Herbert,* 140 B.R. 174, 176 (Bankr. N.D.Ohio 1992) (analyzing ERISA and concluding that IRAs are not excluded from a bankruptcy estate by any federal nonbankruptcy law).

### IV. Applicable State Law and Enforceability of Statutory Restriction for Purposes of § 541(c)(2)

#### A. State Exemption Law

■ Next we examine whether Pennsylvania law operates to exclude the IRA from the bankruptcy estate. We conclude that it does not. Outside bankruptcy, if this case involved judgment execution under state law, the IRA would be at least partially protected because of the exemption provisions of Pennsylvania state law. *See* 42 Pa.Cons.Stat.Ann. § 8124(b)(1)(ix).[15] For purposes of § 541(c)(2), the applicable nonbankruptcy law in this instance is state exemption law, but it does not operate to exclude the IRA from property of the estate. In order to obtain the benefit of state exemption law, Debtor must claim state exemptions in the bankruptcy to insulate the IRA from administration as

part of the bankruptcy estate. Debtor has not done so.[16]

■ Furthermore, the state statutory authority to exempt property from attachment or execution by creditors is not the same as a statutory requirement that the trust corpus be protected from alienation by debtors, such as that existing in spendthrift trusts and ERISA qualified plans. Nothing in the statute prohibits the owner of the IRA from liquidating, assigning, or otherwise transferring the corpus as he chooses. The IRA is alienable by Debtor under Pennsylvania law, notwithstanding the Pennsylvania exemption statute. Therefore, the funds in his IRA are subject to liquidation by the trustee for the benefit of Debtor's creditors.

#### B. Is the IRA a § 541(c)(2) Trust?

■ An IRA also must be a trust for purposes of § 541(c)(2). The Pennsylvania statute does not refer to IRAs as trusts but as "money or other property", *id.* at § 8124(b)(1), and as a "fund". *Id.* at § 8124(b)(1)(ix).[17] The IRA would be protected from a state execution not because it is a trust but only because the Pennsylvania legislature has made a policy decision that, for purposes of state law, IRAs should be insulated from involuntary alienation via a creditor's execution.

Even if the IRA can be considered to be a trust, we conclude that the type of trust envisioned by § 541(c)(2) is one akin to spendthrift trusts and ERISA qualified plans. A spendthrift trust has three elements: (1) the instrument creating it contains an anti-alienation clause; (2) the settlor

---

**15.** "[T]he following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

(ix) Any retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code ..., the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder. This subparagraph shall not apply to: (A) Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy. (B) Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period. (C) Amounts deemed to be fraudulent conveyances."
42 Pa.Cons.Stat.Ann. § 8124(b)(1)(ix).

**16.** We also note that "exclusion" and "exemption" do not mean the same thing. Property that is excluded from the bankruptcy estate never comes into the estate at all, by operation of law, while exempt property is estate property at all times but is protected from the reach of creditors and administration through the estate if the debtor exercises the statutory option. 11 U.S.C. § 522.

**17.** The entire fund will not always be exempted. Certain "amounts" contributed to the "fund" are specifically excluded by the statute. For example, under the statute, contributions to an IRA within one year before a bankruptcy are reachable by creditors under state law. 42 Pa.Cons. Stat.Ann. § 8124(b)(1)(ix)(A).

is not the beneficiary; and (3) the beneficiary has neither exclusive control over distribution nor the right to distribution. *See* Cathy L. Reece, Gary H. Ashby, *Retirement Benefits—Exempt and Excluded? Maybe, Maybe Not (Part 4)*, Norton Bankruptcy Law Adviser 6, 7 (January 1991). *See also* RESTATEMENT (SECOND) OF TRUSTS § 152 (1959).[18] ERISA qualified plans are similar to spendthrift trusts in that the beneficiary cannot reach the funds absent certain events, typically death, retirement, termination of employment or disability.

IRAs are not spendthrift trusts, ERISA qualified plans, or any other property interest that cannot be freely transferred by the owner. IRAs do not fit within the parameters of a trust for purposes of § 541(c)(2).

This conclusion is buttressed by Pennsylvania public policy that bars settlor-debtors from insulating trust assets from creditors while retaining control over the corpus. *See generally Posner v. Sheridan*, 451 Pa. 51, 61, 299 A.2d 309, 314 (1973). In Pennsylvania, it is "against public policy for one so to limit his property in trust that he retains to himself the beneficial incidents of ownership therein and yet places it beyond the reach of those to whom he is or may become indebted." *In re Mogridge's Estate*, 342 Pa. 308, 309, 20 A.2d 307, 311 (1941). Even a spendthrift clause is ineffective when the settlor is the beneficiary. *See Posner v. Sheridan*, 451 Pa. 51, 61, 299 A.2d 309, 314 (1973). *See also In re Sopkin*, 57 B.R. 43, 49 (Bankr.D.S.C.1985); *In re Schwartz*, 58 B.R. 606, 607 (Bankr.N.D.Iowa 1984). *See also In re Goff*, 706 F.2d 574, 587 (5th Cir.1983), *rev'd on other grounds by Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

Debtor argues that he has shown no intention of liquidating his IRA. However, his intention is not dispositive. At the time the trust at issue in *Nolan v. Nolan*, 218 Pa. 135, 67 A. 52 (1907), was created, no debt existed or was in contemplation and the settlor had not evidenced an intention to withdraw the property from the trust. Nevertheless, the court held:

> As against existing creditors such a conveyance would be fraudulent, and, in order to make it valid as to subsequent creditors, it must appear that the settlor has divested himself of all rights of ownership in, and control over, the property thus conveyed, reserving only to himself the right to receive the income during life, and it must also appear that no other act on his part is required to be done to complete the title in, or make a transfer of the ownership to, the beneficiaries who are entitled to take the same under the terms and conditions of the conveyance. Even in such a case the income would be considered assets subject to attachment by a creditor of the settlor. It is against public policy, and not consonant with natural justice and fair dealing, as between debtor and creditor, that a settlor should be permitted to play fast and loose with his property, in such a manner as to have the use of the income during life, and the right of disposing of the principal by will at any subsequent time he chooses to exercise the power, thus giving him all of the substantial benefits arising from the ownership thereof while he has safely put his property beyond the reach of creditors.

*Nolan v. Nolan*, 218 Pa. at 139, 67 A. at 53. The court in *Rienzi v. Goodin*, 249 Pa. 546, 95 A. 259 (1915), said:

> It is against public policy to permit the defendant under cover of a trust in which she reserves to herself the benefits of the property during life and the disposition of it after death, to enjoy all the benefits of ownership and share none of the burdens, while at the same time the property is beyond the reach of creditors. *Nolan v. Nolan, supra.*

95 A. at 260. *See also Nolan v. Nolan*, 218 Pa. at 140, 67 A. at 54. *Accord Morton v.*

---

18. The RESTATEMENT (SECOND) OF TRUSTS provides at § 152:

> *Restraint on Alienation of Income.* (1) Except as stated in §§ 156 and 157, if by the terms of a trust the Beneficiary is entitled to the income from the trust property for life or for a term of years and it is provided that his interest shall not be transferable by him and shall not be subject to the claims of his creditors, the restraint on the voluntary and involuntary transfer of this right to the income accruing during his life is valid. (2) A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of a beneficiary is imposed is a spendthrift trust.

*Morton,* 394 Pa. 402, 147 A.2d 150 (1959). The IRA in the matter at bar falls squarely within the parameters of the Pennsylvania cases denying spendthrift trust protection when the settlor has immediate and full access to the funds subject to the trust. The Restatement is in accord with Pennsylvania trust law. Section 156 of the Restatement provides that, where the settlor is the beneficiary, "he may voluntarily transfer his interest although the terms of the trust contain an express restraint against his voluntary alienation". RESTATEMENT (SECOND) OF TRUSTS § 156, Comment g (1959). Section 156 further provides that when a person creates a trust for his own benefit and the trust contains an anti-alienation clause, creditors can reach his interest, regardless of the fact that the trust is for support. *Id.* at (1), Comment d.

### C. *Contractual Restriction*

The contractual restriction in the IRA documents in this case falls within the exceptions to the enforcement of anti-alienation clauses noted in the Restatement. The clause does not operate to prevent Debtor, the settlor-beneficiary, from gaining access to the trust at any time.

Our research has disclosed no case law contradicting this policy and the parties have cited us to none. Unless a beneficiary is unable to reach the corpus of his "trust", Pennsylvania law does not afford the trust protection from the beneficiary's creditors. Therefore, we conclude that IRAs are not the type of interest that § 541(c)(2) of the Bankruptcy Code was designed to preserve, i.e., "spendthrift (or analogous) trusts". *In re Meehan,* 173 B.R. 818, 821 (S.D.Ga.1994), *citing* H.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6325.

### *Conclusion*

The IRA is property of this bankruptcy estate. The pleadings and briefs do not indicate whether Debtor is able to exempt his IRA. We are not called upon to decide that issue now. We will afford Debtor the opportunity to amend his exemptions in light of this opinion.

An appropriate order will be entered.

### JUDGMENT ORDER

And now, to-wit, this **19th** day of **April, 1995,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that judgment is entered for Plaintiff and against Defendant–Debtor. Debtor shall have 10 days in which to file amended exemptions, serve same upon Trustee and all creditors, together with a notice that objections to the amended exemptions must be filed and served within 40 days hereof, and file proof of service with the court. If Debtor files and serves amendments to exemptions within 10 days, Trustee and all creditors shall have 40 days herefrom to file objections to the amendment.

If no amended exemptions are filed and served within the 10 days, then, within 30 days hereof, Debtor shall turn over to Trustee the proceeds of the IRA less any tax withholding and penalties which may be required of or by the depository institution.

It is **FURTHER ORDERED** that Debtor shall turn over his interest in a time share and savings bond to Trustee within ten days hereof.